The **CHICAGO FLORSHEIM SHOE STORE COMPANY**, Plaintiff-Appellant,

v.

**CLUETT, PEABODY & CO., INC.,** Defendant-Appellee.

No. 86–2798.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1987.

Decided Aug. 18, 1987.

As Amended Aug. 18, 1987.

James K. Pendleton, St. Louis, Mo., for plaintiff-appellant.

Jack Hassid, Cluett Peabody & Co., New York City, for defendant-appellee.

Before BAUER, Chief Judge,
POSNER and EASTERBROOK, Circuit
Judges.

BAUER, Chief Judge.

Florsheim Shoe Company brings this appeal contending that Cluett, Peabody & Co., Inc. is liable for losses resulting from Lytton's Corporation's breach of a long standing concession agreement with Florsheim. Since 1958, Florsheim and Lytton's participated in a concession agreement whereby Florsheim sold its shoes at Lytton's retail stores. The agreement required that Lytton's remit the sales proceeds generated by Florsheim's shoes less its low cut. Apparently the joint venture worked well, as the parties extended the agreement several times with only minor alterations, continuously through March 31, 1984. Beginning in 1961, Cluett began to purchase Lytton's outstanding stock and later acquired Lytton's in its entirety by January, 1975. The concession arrangement continued apace after Cluett acquired Lytton's. On February 3, 1983, however, Cluett slipped out of the shoe business [1] and sold Lytton's to LHLC Corporation pursuant to a leverage buy out agreement ("l.b.o.") involving General Electric Credit Corporation.

Essentially, the l.b.o. was accomplished by pledging Lytton's assets as security for an $11.4 million loan from General Electric. That money was then paid to Cluett as consideration for the sale of Lytton's to LHLC. Florsheim was made aware of the l.b.o. almost contemporaneously with the transaction through local and national press coverage. However, Florsheim continued to transact business with Lytton's pursuant to the existing concession agreement without ever securing Lytton's promise of continued performance by seeking assurances available under the U.C.C. See U.C.C. § 2–609 (1977).

Subsequently, Lytton's breached the concession agreement by failing to remit payment to Florsheim for sales made during March, 1984. On March 30, 1984, Lytton's filed a voluntary petition for reorganization under Chapter XI of the United States Bankruptcy Code. Florsheim has filed a claim in the bankruptcy proceedings and is also a member of Lytton's creditors committee which is pursuing issues relevant to a fraudulent conveyance claim regarding Cluett's l.b.o. transaction.

Florsheim commenced this action on August 7, 1984. Its complaint alleged that Lytton's was a mere instrumentality or the alter ego of Cluett at the time of the l.b.o. transaction and thereby charged Cluett with responsibility for breach of the concession agreement. Judge Mills subsequently granted Cluett's motion for summary judgment pursuant to FED.R.CIV.P. 56(c), which Florsheim now appeals.

*The Discovery Proceedings*

Florsheim contests the disposition of its claim on a motion for summary judgment, alleging that it was not afforded adequate discovery to oppose the motion. Three months after filing suit, in November, 1984, Florsheim initiated its discovery proceedings by requesting the production of certain documents to which Cluett responded on January 22, 1985. Although Florsheim contends that Cluett refused to produce such documentation, Florsheim's own appellate brief and appendix indicate that as early as March 16, 1983, its credit department received an accountant's report detailing Lytton's capital structure at the time of the l.b.o. Moreover, despite the fact that in response to Cluett's subsequent interrogatories, Florsheim had identified at least four individuals having knowledge of the facts underlying its alter ego theory, it failed to schedule or take any depositions and did not serve any interrogatories upon Cluett or Lytton's throughout the course of this entire litigation.

However, Florsheim explains that it was unable to engage in adequate discovery because of the constant harassment engendered by Cluett's consecutive mo-

---

**1.** *See* Witzelsucht: "A morbid tendency to pun, make poor jokes, and tell pointless stories, while being inordinately entertained thereby...."

tions for summary judgment. The short answer to Florsheim's self-professed dilemma is contained in FED.R.CIV.P. 56(f), which provides that:

> *When Affidavits are Unavailable.* Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

While Florsheim requested the production of documents establishing Lytton's capitalization at the time of the l.b.o. and otherwise opposed Cluett's motion by arguing the merits of its piercing claim, it failed to submit a Rule 56(f) affidavit in order to secure the additional discovery it now claims was vital to its case. *See Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986) (party opposing motion for summary judgment must file a Rule 56(f) affidavit if without knowledge to respond to the motion). Hence, because Florsheim failed to move for a continuance to obtain discovery under Rule 56(f), we cannot conclude that the district court abused its discretion in proceeding to rule on Cluett's motion for summary judgment. *See Vachet v. Central Newspaper, Inc.*, 816 F.2d 313, 317 (7th Cir.1987) (where nonmoving party fails to request a continuance pursuant to Rule 56(f) it is not error for a district court to rule on motion for summary judgment).

■ Moreover, despite Florsheim's assertions to the contrary, it does not appear that it was prevented from pursuing adequate discovery. Unlike *Egger v. Phillips*, 669 F.2d 497 (7th Cir.1982), cited by Florsheim, the district court never stayed the discovery proceedings here. Thus, during the five months prior to Cluett's initial motion for summary judgment Florsheim was free to conduct discovery. Florsheim also had sufficient time to pursue discovery during the twenty-one months which passed after the denial of Cluett's first motion and the trial court's final disposition of the case on October 1, 1986. As early as

November 13, 1984, Florsheim acknowledged the identities of several individuals with specific information relating to its claim, yet Florsheim failed to depose a single person in support of its opposition to Cluett's motion.

Finally, Florsheim contends that Cluett's refusal to produce documents establishing Lytton's capitalization at the time of the l.b.o. in February, 1983, prevented its response to Cluett's motion for summary judgment. Florsheim cites our opinion in *Cedillo v. Int'l Assn. of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7 (7th Cir.1979), where this court reversed the granting of a motion for summary judgment because we found that the nonmoving party was effectively denied the statistical data needed to establish a claim of disparate impact. However, despite Florsheim's repeated requests to compel production of Lytton's financial records, it appears that as early as March 16, 1983, Florsheim received a *pro forma* balance sheet detailing Lytton's capitalization as of January 31, 1983. Thus, Florsheim can hardly maintain that it was denied vital information to oppose Lytton's motion when it already possessed the requested data.

### Piercing the Corporate Veil

Florsheim contends that Cluett may be held liable for Lytton's breach of its concession agreement under a rather novel application of piercing the corporate veil. Although it is uncontested that Cluett divested itself from Lytton's more than a year before the breach, Florsheim argues that the elements necessary to pierce Lytton's corporate veil should be examined at the time of the l.b.o. which Florsheim alleges caused Lytton's subsequent collapse. The difficulty with Florsheim's position is two-fold. Initially, we make an observation which Florsheim's appellate counsel rather unwittingly acknowledged during oral argument. It is apparent that Florsheim's piercing theory is merely an attempting to shape what is obviously a fraudulent conveyance argument, regarding the l.b.o. transaction, into a cause of action distinct

from Lytton's bankruptcy proceedings in order to collect one hundred cents on the dollar for its claim.

Moreover, even if we were inclined to allow Florsheim to make such an end-run around Lytton's bankruptcy proceedings, which we are not, Florsheim's continued insistence that Cluett must disprove the allegation that its l.b.o. transaction constituted a wrongful stripping of Lytton's assets in order to prevail on its motion for summary judgment, simply fails to comport with direct Supreme Court precedent to the contrary. The Supreme Court's opinion in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), makes clear that where the nonmoving party will bear the ultimate burden of proof at trial, it must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case" in order to withstand a motion for summary judgment. *Id.* at 2553. While the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, Rule 56(e) "requires that the nonmoving party go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

In clinging to its black letter position that it is the moving party, Cluett, who must establish the lack of a genuine issue regarding the material facts in order to prevail on a motion for summary judgment, Florsheim fails to comprehend the Court's observation that:

> where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* Florsheim has failed to marshal anything more than mere conjecture in attempting to establish that Cluett's l.b.o. involved a misuse of the corporate form necessary to pierce the corporate veil and hold Cluett responsible for Lytton's default on the concession agreement.

■ Under Illinois law,[2] separate corporate existence is the rule to which piercing the corporate veil is a stringently applied exception. *See Van Dorn v. Future Chemical & Oil Corp.,* 753 F.2d 565 (7th Cir.1985) (applying Illinois law); *Central National Bank in Chicago v. Fleetwood Realty Corp.,* 110 Ill.App.3d 169, 65 Ill. Dec. 730, 441 N.E.2d 1244 (1982). Indeed, it is the party seeking to set aside the corporate identity of one entity as the alter ego of another, who must bear the burden of establishing that the corporation was so controlled and manipulated that it had become a mere instrumentality of another, and furthermore, that misuse of the corporate form would sanction a fraud or promote injustice. *See Main Bank of Chicago v. Baker,* 86 Ill.2d 188, 56 Ill.Dec. 14, 427 N.E.2d 94 (1981); *Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.,* 45 Ill.App.2d 192, 195 N.E.2d 287 (1963).

■ Florsheim has failed completely in even attempting to establish that Cluett exercised the degree of control over Lytton's as to render it a mere instrumentality and therefore the alter ego of Cluett. The defendant's affidavits establish that it sold its interest in Lytton's more than a year before Florsheim's cause of action arose. Moreover, Cluett no longer had any directors or officers in common with Lytton's as of the l.b.o. in February 1983. Yet, while admitting that Cluett divested itself from Lytton's, Florsheim proffers nothing more than conjecture, speculating that if Cluett's l.b.o. sale of Lytton's constituted a stripping of its assets (i.e. a fraudulent conveyance) liability should be visited upon Cluett for Lytton's subsequent default. Such guess work regarding whether or not

**2.** In a telephone conference with Magistrate Evans on July 27, 1986, the parties stipulated that Illinois law would apply to the piercing issue.

the l.b.o. transaction was fraudulent, however, will not withstand a motion for summary judgment where Florsheim bears the heavy burden of establishing control and fraud in order to pierce Lytton's corporate veil. *See Celotex*, 106 S.Ct. at 2553; *see also Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Barber v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490 (7th Cir.1986) ("unless they [plaintiffs] have produced enough evidence to allow a jury to find in their favor, they lose").

For the foregoing reasons the judgment of the district court is

AFFIRMED.