**Arthur F. HORNSBY and Kathleen Hornsby, Plaintiffs,**

v.

**HORNSBY'S STORES, INC., Century Wholesale Company, Inc., and Pubco Corporation, Defendants.**

**No. 89 C 6716.**

United States District Court, N.D. Illinois, E.D.

March 13, 1990.

 

Donald F. Black, Black & Black, Morris, Ill., Patrick E. Mahoney and Donald R. Crowe, Chicago, Ill., for plaintiffs.

Gerald G. Saltarelli and Stephanie Leider, Butler Rubin Newcomer Saltarelli & Boyd, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

Arthur Hornsby and Kathleen Hornsby have filed this action against Hornsby's Stores, Inc. ("the Store"), Century Wholesale Company, Inc. ("Century"), and Pubco Corporation. Hornsby and the Store have

filed cross motions for summary judgment, and Century and Pubco have filed a joint motion to dismiss. For the reasons explained herein, we grant the Hornsbys' motion for summary judgment in part and we grant the motion to dismiss the claims against Century and Pubco.

## I. Cross Motions for Summary Judgment.

The bulk of the facts relevant to the cross motions for summary judgment are undisputed. The Hornsbys owned a large piece of commercial property in Morris, Illinois. On December 20, 1984, they leased this property to the Store. The parties executed a comprehensive lease agreement which allocated responsibilities to each party with respect to the property. In addition to establishing a monthly rent and penalties for late payment, the lease contained additional covenants which required the Store to obtain property insurance, to pay real estate taxes and utilities, and to make certain repairs.

On February 27, 1985, the Store subleased the property to Duckwall–Alco Stores, Inc. ("Duckwall"). However, Duckwall declared bankruptcy and abandoned the store on July 19, 1989. The Store paid rent to the Hornsbys up until the time that Duckwall vacated the premises, but did not pay any rent for the balance of July and for the remaining months of 1989. Moreover, the Store did not pay the remaining real estate taxes, utilities and maintenance after July, 1989.

There is no dispute between the parties as to liability; the Store acknowledges that it has breached the lease agreement. However, the Hornsbys and the Store have radically different views of the damages to which the Hornsbys are entitled. While the Store contends that it owes the Hornsbys about $70,000 as of January 1, 1990, the Hornsbys claim that they are entitled to approximately $910,000.00 in damages.

There are two principal reasons for this wide disparity. The primary cause is the parties' differing interpretations of the damages clause of the contract. The

Hornsbys argue that this clause provides for acceleration of future rental payments; the damage figure suggested by the Hornsbys includes every payment that the Store would have been obligated to make during the lease term. The Store, on the other hand, maintains that the Hornsbys can only recover the amount that it currently owes them. The second reason for the disparity in proposed damages is a dispute over the precise amount of damages that have accrued to date.

■ The Hornsbys offer two arguments in support of their claim that damages should be accelerated. First, they contend that the language of the lease agreement entitles them to liquidated damages in the form of accelerated rent and expense payments. Second, they argue that the Store's legal arguments during the Duckwall bankruptcy proceedings estop it from refusing to pay accelerated damages in the current litigation. However, we find that neither the lease agreement nor the Store's prior conduct militate in favor of awarding the liquidated damages sought by the Hornsbys.

Paragraph 14(a) of the lease agreement specifies the remedies available to the Hornsbys upon default by the Store.[1] Stripped of its legalese, this provision provides the Hornsbys with two basic remedies, neither of which sustains the measure of damages proposed by the Hornsbys. The first remedy provided in the agreement is the power to terminate the lease. Should they exercise this option, the lease agreement provides that the Hornsbys may recover liquidated damages consisting of, "a sum of money equal to the value of the minimum guaranteed rent plus the percentage rent based on the preceding year, and other sums provided herein to be paid by TENANT to LANDLORD for the remainder of the lease term, *less the fair rental value of the lease premises for said period* " (emphasis added). While this remedy incorporates accelerated rental payments, it also includes an offset for the fair rental value of the premises for the unused portion of the lease. However, the damage

---

1. Paragraph 14(a) of the lease agreement is attached to this opinion as Appendix A.

figure proposed by the Hornsbys does not account for such an offset. Accordingly, the damages sought by the Hornsbys cannot be awarded on the basis of the termination remedy.

■ Similarly, the second remedy described in the agreement does not support liquidated damages consisting of accelerated rent payments. The lease agreement provides that upon the Store's default, the Hornsbys may repossess the premises without terminating the lease. Upon the exercise of the repossession remedy, the lease specifies the damages which the Hornsbys may recover:

> LANDLORD shall attempt to relet all or any part of the leased premises for such rent and upon such terms as shall be reasonably satisfactory to LANDLORD.... If LANDLORD does not relet the leased premises, TENANT shall pay to LANDLORD on demand as liquidated damages and not as a penalty a sum equal to the amount of the guaranteed minimum rent plus the percentage rent based on the preceding year, and other sums provided herein to be paid by TENANT for the remainder of the lease term. If the leased premises are relet and a sufficient sum shall not be realized from such reletting ... to satisfy the rent herein provided to be paid for the remainder of the lease term, TENANT shall pay to LANDLORD on demand any deficiency and TENANT agrees that LANDLORD may file suit from time to time to recover any sums falling due under the terms of this paragraph.

This remedy does not require the Hornsbys to deduct the fair market value of the premises for the unused portion of the lease. Therefore, if they are unable to relet the property, they could recover damages equal to every payment that the Store would have been obligated to make over the duration of the lease. However, the agreement does not entitle the Hornsbys to accelerate these payments. On the contrary, the language chosen by the parties contemplates continued efforts during the lease to relet the property. If these efforts are unsuccessful, the Hornsbys may then sue the Store "from time to time." Therefore, we find that the language of the lease agreement does not support the Hornsbys' claim for accelerated damages.

■ However, the Hornsbys also argue that we may award accelerated damages even though these damages are not provided for in the lease agreement. According to the Hornsbys, the Store should be forced to pay accelerated damages because it sought to collect accelerated damages from its subtenant, Duckwall. However, we find that this argument lacks merit for two reasons. First, the contractual relationship between Duckwall and the Store is distinct from the contractual relationship between the Store and the Hornsbys. Therefore, it is not inconsistent for the Store to argue that its contract with Duckwall provides for acceleration, while advocating the opposite position with regard to its contract with the Hornsbys. Second, the Store's claim against Duckwall was made during the pendency of Duckwall's bankruptcy petition. Accordingly, the Store's claim was drafted in accordance with § 502 of the Bankruptcy Code, 11 U.S.C. § 502, which delineates the claims a lessor may bring against a lessee. As the Store observes, the statute dispenses with a consideration of the particular lease at issue, and substitutes a statutory formula for calculating claims. For these reasons, we find that the Store's position in its claim against Duckwall does not estop it from denying the availability of accelerated damages in the present case.

Because we find that accelerated damages cannot be awarded, the Hornsbys can only recover damages for the amount that the Store is currently obligated to pay under the agreement. The parties have stipulated that the Store owes $53,870.97 in rent and $14,777.43 in real estate taxes. However, there is disagreement over how much the Store owes the Hornsbys for utilities, repairs, interest and attorney's fees. We consider each of these issues in turn.

■ The Hornsbys contend that they are entitled to $8,700 in utilities, as this is the amount of estimated utilities which the Store claimed in the Duckwall bankruptcy

proceedings. However, this argument rests on the same faulty premises which we rejected in connection with the Hornsbys' entreaty for accelerated rent. In ¶ 8 of the lease agreement, the Store agrees to pay for "all utilities *used* on the premises" (emphasis added). Thus, the agreement obligates the Store to pay only for the actual utilities that are used on the premises; no provision is made for the payment of estimated utilities in the event of default. Because the Hornsbys have failed to establish any actual expenditures for utilities, we cannot award summary judgment for these costs.

■ We also decline to award summary judgment damages for repair costs. The Hornsbys have produced a long list of "repairs" that it incurred after the Store abandoned the property. While the Hornsbys have produced facts sufficient to establish that they incurred these expenses, they have failed to establish that the Store is obligated to pay these expenses under the lease agreement. Under the agreement, the Store is obligated to keep the property in good repair and condition, ¶ 10(A)(5), and to pay repair costs necessary to relet the premises, ¶ 14(A). Should the repair expenses fall into one of these categories, the Store would undeniably be obligated to reimburse the Hornsbys. However, based on the record before us, there is a genuine issue of material fact as to whether these repairs are cognizable as damages under the agreement.

Paragraph 14(B) of the lease provides that the Store shall pay 12% interest on any rent which is not paid when due. It is clear from the record that the Store owes the Hornsbys at least $1,193.55 in interest. The Hornsbys claim that they are entitled to an additional $219.35, which represents the interest that accrued from December 1 to December 15, 1989. However, the Store calculated interest only until the end of November, 1989. It is unclear from the record when, or if, the Store was no longer obligated to pay interest on past due amounts. Accordingly, because there is no issue of fact that the Store owes the Hornsbys $1,193.55, we award them this amount.

If they can establish that additional interest payments are warranted, we will revisit the issue.

The final issue raised by the motions for summary judgment is the amount of attorney's fees to which the Hornsbys are entitled. Paragraphs 14(D) and 10(A)(16) provide that the Hornsbys are entitled to recover their reasonable attorney's fees when they elect to cure a default by the tenant. The Hornsbys' attorneys have presented detailed time sheets which indicate that their fee for prosecuting this action is $7,639.32. Although the Store initially contested these fees on the ground that no affidavit was submitted in support, the Hornsbys have cured this defect by submitting the affidavit of Donald F. Black. The fees appear to be reasonable, and the Store has failed to present any facts which would render them suspect. Therefore, we grant summary judgment in favor of the Hornsbys for attorney's fees of $7,639.32.

To summarize, we grant partial summary judgment in favor of the Hornsbys in the amount of $77,481.27. This damage figure consists of $53,870.97 for rent, $14,777.43 for real estate taxes, $1,193.00 in interest, and $7,639.32 in attorney's fees. We find that there are material issues of fact with respect to utilities expenses, interest accruing after November, 1989, and repair costs.

### II. Motion to Dismiss Count II.

For the purposes of this motion to dismiss, we accept the truth of the Hornsbys' factual allegations. *Zinser v. Rose*, 868 F.2d 938, 939 (7th Cir.1989). Prior to 1984, the Hornsbys owned all of the outstanding stock in the Store and Century. In December of 1984, the Hornsbys sold their interest in these corporations to Pubco. The Store, Pubco and Century now share the same officers and directors. The three corporations also share the same office space, the same office staff, and the same telephone number.

At the time the stock transfer agreement was executed, both Century and the Store were profitable corporations with combined assets in excess of eight million dollars. However, after the stock transfer, Pubco

and Century "set into motion a course of conduct to transfer to Century and Pubco nearly all of the assets of [the Store.]" (Cmplt. ¶ 8). This transfer of assets was made without any consideration being paid to the Store.

At the same time the stock transfer agreement was consummated, the Store and the Hornsbys executed a lease agreement; this is the same agreement which is the basis for the cross motions for summary judgment, discussed *supra*. The Store breached this agreement in July, 1989. However, the Store does not have sufficient assets to pay damages for this breach.

The Hornsbys seek to hold Pubco and Century liable for the Store's breach. Although it is not easily ascertainable from the text of the complaint, they appear to rely on two theories.[2] First, they suggest that the transfer of the Store's assets to Pubco and Century is voidable as a fraudulent conveyance. Second, they allude that the three corporations should be liable for each other's debts under an "alter ego" theory. However, we find that the Hornsbys have failed to state a claim under either theory.

■ Illinois courts have recognized two types of transfers that are voidable as a fraudulent conveyance; those that constitute "fraud in fact" and those that constitute "fraud in law." A transfer is fraudulent in fact if it was made with the intent to defraud creditors. *Indiana Nat. Bank v. Gamble*, 612 F.Supp. 1272, 1276 (N.D.Ill. 1984) (citation omitted); *Kardynalski v. Fisher*, 135 Ill.App.3d 643, 90 Ill.Dec. 410, 412, 482 N.E.2d 117, 119 (2d Dist.1985). There are three elements to the fraud in law theory. First, there must be a voluntary gift of property. Second, there must be an existing or contemplated indebtedness. Third, the debtor must fail to retain sufficient assets to pay the indebtedness. *Indiana Nat. Bank*, 612 F.Supp. at 1276 (citations omitted); *Tcherepnin v. Franz*, 475 F.Supp. 92, 96 (N.D.Ill.1979); *Kardy-*

*nalski*, 90 Ill.Dec. at 413, 482 N.E.2d at 120.

■ The complaint does not contain allegations sufficient to establish fraud in fact. The Hornsbys clearly allege that the Store's assets were transferred to Century and Pubco. However, even when viewing the allegations in the light most favorable to the Hornsbys, there are no allegations suggesting that this transfer was made with the intent to defraud the Hornsbys. Indeed, the Hornsbys admit that the Store performed its obligations under the lease for five years after the agreement was executed, and five years after the transfer of assets was completed. (Cmplt. ¶ 17). Accordingly, we are unable to find fraud in fact.

■ The Hornsbys also fail to adequately plead a cause of action for fraud in law. They have failed to plead that the Store owed an actual or contemplated debt to the Hornsbys at the time the transfer was completed. The Store transferred its assets to Pubco and Century in 1984. However, it was not until five years later that the Store incurred the debt at issue here. Moreover, the fact that the Store performed its obligations under the agreement for five years belies the notion that the transfer left it with insufficient assets. Accordingly, we dismiss the claim that the transfer of the Store's assets to Pubco and Century constituted a fraudulent conveyance.

■ Similarly, we find that Count II of the complaint cannot be sustained under an "alter ego" theory. Under Illinois law the general rule is that separate corporations have separate corporate identities. *See e.g., Chicago Florsheim Shoe S. v. Cluett, Peabody & Co.*, 826 F.2d 725, 728 (7th Cir.1987) (citations omitted). Although there are some exceptions to this rule, they are not favored and are stringently applied. *Id.*

■ In order to pierce the corporate veil on the ground that one corporation is the "alter-ego" of another, the plaintiff bears the burden of establishing two facts.

---

**2.** The Hornsbys have attempted to plead both theories in one count, despite the directive of

Fed.R.Civ.P. 10(b) that separate claims should be contained in separate counts.

First, she must show that "the corporation was so controlled and manipulated that it had become a mere instrumentality of another." *Chicago Florsheim Shoe S.,* 826 F.2d at 728; *Baker v. Caravan Moving Corp.,* 561 F.Supp. 337, 340 (N.D.Ill.1983); *McCracken v. Olson Companies, Inc.,* 149 Ill.App.3d 104, 102 Ill.Dec. 594, 598, 500 N.E.2d 487, 491 (1st Dist.1986). In addition, the plaintiff must demonstrate that recognition of separate corporate identity would sanction a fraud or promote an injustice. *Id.*

 The Hornsbys' allegations are insufficient to meet either of these requirements. The fact that the three corporations share directors, office space and office staff do not suggest that the Store was a mere instrumentality of the other corporations, nor does it indicate some fraud or injustice. "The separate corporate entities of two corporations may not be disregarded merely because one owns the stock of another or because the two share common directors or occupy the same office space." *Sumner Realty Co. v. Willcott,* 148 Ill. App.3d 497, 101 Ill.Dec. 966, 969, 499 N.E.2d 554, 557 (5th Dist.1986) (citations omitted). The only other pertinent allegation is that the Store was undercapitalized. However, this fact alone does not justify a finding that the Store was the "alter ego" of Pubco and Century. More importantly, this allegation is contradicted by the Hornsbys' admission that the Store had sufficient capital to meet its obligations for five years after its capital was allegedly drained. (Cmplt. ¶ 17).

On balance, we find that the Hornsbys have not alleged facts sufficient to state a cause of action. They have failed to allege any facts that suggest the Store was under the control of Pubco or Century. Moreover, there is no indication that recognizing separate corporate existence would promote injustice or sanction a fraud. Therefore, we grant the motion to dismiss Count II.

### Conclusion

We award partial summary judgment in favor of the Hornsbys in the amount of $77,481.27. We grant Century's and Pub-co's motions to dismiss Count II of the First Amended Complaint. We observe that the remaining claims are few and relatively undisputed. There seems to be no reason why the remainder of this case could not be quickly resolved without further expense to the litigants. The parties should report to the Court regarding the status of their settlement discussions at the next status conference now scheduled for March 16, 1990, at 10:00 a.m. It is so ordered.

### APPENDIX A

14. *Defaults by Tenant and Remedies:*

A: *Defaults by Tenant:* Without further notice, LANDLORD may terminate this lease if any default by TENANT continues after notice of default; in case of nonpayment of rent or the nonpayment of any other charges or payments provided to be made hereunder for more than fifteen (15) days or in any other case if TENANT does not cure the default within a reasonable time, but not later than thirty (30) days after notice of default; or if TENANT makes any assignment for the benefit of creditors, commits any act of bankruptcy or files a petition under any bankruptcy or insolvency law, or if such a petition filed against TENANT is not dismissed within ninety (90) days; or if a receiver or similar officer becomes entitled to the leasehold; or if TENANT'S interest in this lease is taken on execution or other process of law in any; [sic] action against TENANT; or if the lease premises are levied upon by any revenue officer or similar office; or if TENANT does, or permits to be done, any act which creates a mechanic's lien or claim therefor against land or building or which the lease premises are a part and TENANT does not comply with the provisions of this agreement. Upon termination of the lease, LANDLORD may re-enter the leased premises with or without process of law, using such force as may be necessary and remove all persons, fixtures and chattels therefrom, and LANDLORD shall not be liable for any damages resulting therefrom. Upon such repossession of the leased premises, LANDLORD shall be enti-

tled to recover as liquidated damages and not as a penalty a sum of money equal to the value of the minimum guaranteed rent plus the percentage rent based on the preceding year, and other sums provided herein to be paid by TENANT to LANDLORD for the remainder of the lease term, less the fair rental value of the lease premises for said period. Upon the happening of any one or more of the above-mentioned events, LANDLORD may repossess the leased premises by forcible entry or detainer suit, or otherwise, without demand or notice of any kind to TENANT (except as hereinabove expressly provided for) and without terminating this lease, in which event LANDLORD shall attempt to relet all or any part of the leased premises for such rent and upon such terms as shall be reasonably satisfactory to LANDLORD (including the right to relet the leased premises for a term greater or lessor than that remaining under the lease term, and the right to relet the leased premises as a part of a larger area, and the right to change the character or use made of the leased premises). For the purpose of such reletting, LANDLORD may decorate and make any repairs, changes, alterations or additions in or to the leased premises that may be necessary or convenient. If LANDLORD does not relet the leased premises, TENANT shall pay to LANDLORD on demand as liquidated damages and not as a penalty a sum equal to the amount of the guaranteed minimum rent plus the percentage rent based on the preceding year, and other sums provided herein to be paid by TENANT for the remainder of the lease term. If the leased premises are relet and a sufficient sum shall not be realized from such reletting after paying all of the expenses of such decorations, repairs, changes, alterations, additions, the expenses of such reletting and the collection of the rent accruing therefrom, to satisfy the rent herein provided to be paid for the remainder of the lease term, TENANT shall pay to LANDLORD on demand any deficiency and TENANT agrees that LANDLORD may file suit from time to time to recover any sums falling due under the terms of this paragraph. Any recovery under this paragraph shall be without relief from valuation and appraisement laws.