48 F.3d 1222
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Randy TRUNK, Plaintiff-Appellant,
v.
Steven L. REAMES, et al., Defendants-Appellees.
 No. 93-1517.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 6, 1995.*
Decided March 7, 1995.
 
 Before PELL, MANION and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Randy Trunk, while a prisoner at the Danville Correctional Center in Danville, Illinois, filed a pro se complaint under 42 U.S.C. Sec. 1983 against Steven Reames, Sheriff of Jasper County, Indiana, Michael Cain and Terry Risner, Deputy Sheriffs of Jasper County, and two unknown deputy sheriffs. The Defendants filed a motion for summary judgment which was granted by the district court. Trunk, appearing pro se, filed the instant appeal. We now affirm the judgment of the district court.
 
 
 2
 On December 12, 1989, Trunk was residing in Tefft, Indiana, located in the northern part of Jasper County. Trunk left his house driving a purple tow truck with his girlfriend, Mary Harbert, to buy beer and cigarettes at a bar located in the nearby town of San Pierre, Indiana. Paul Carter, an acquaintance of Trunk, who remained at the house after Trunk and Harbert left, telephoned the Jasper County Sheriff's Department and advised Officer Risner that Trunk was intoxicated, that he was driving in a reckless manner, and that he was armed with a small caliber automatic weapon. Carter also told Risner that Trunk was driving a purple tow truck and that he was en route to his residence in Tefft, Indiana from San Pierre. This information was thereafter radio dispatched to Officer Cain.[1] Cain responded to the call and observed a purple tow truck at the intersection of State Road 10 and County Road 400 East and recognized it as the vehicle described over the police radio. Cain pursued the vehicle, turning on his red flashing lights in an effort to stop the vehicle. Trunk who, as indicated by Carter, was driving the tow truck, did not see the flashing lights until he was pulling into his driveway.
 
 
 3
 Deputy Cain parked his vehicle on the curb, approached the tow truck, and asked Trunk to produce his driver's license and vehicle registration. Trunk responded in a loud and abusive tone, insisting that Cain was trespassing on his property. Cain asked Trunk to exit the tow truck so that he could frisk him for weapons. Trunk complied and no weapons were found. At this time, officers Perry and Williams, who were also responding to the dispatch, arrived at the Trunk Residence. Cain then asked Trunk for consent to search the tow truck for weapons. Trunk complied. The search of the truck revealed an open container of alcohol and a six pack of beer in the cab of the vehicle. As a result of Cain's loud and abusive behavior and the discovery of alcoholic beverages in the truck, Cain requested Trunk to take a seat in his patrol car, which he did. Trunk then submitted to a breathalyzer test. A computer check revealed that Trunk had only a learner's permit to operate a vehicle which could be used only when accompanied by a licensed driver over the age of 18 years. Cain then asked officer Perry to contact the passenger in the vehicle, Mary Harbert, to establish whether she had a valid driver's license. Since Harbert had left the tow truck and entered Trunk's residence, Perry knocked on the front door of the residence. Harbert opened the door, and Perry questioned her about the weapon which Cain was suspected of having and asked her whether she held a valid driver's license. Harbert stated that she was not in possession of a weapon and that she did not have any information regarding one. Harbert then invited Deputy Perry into the residence regarding his request for identification. Perry followed her into the front room of the residence from the porch and checked the contents of her purse. Perry did not find a valid driver's license. This information was relayed to Cain. Trunk continued to be antagonistic and verbally abusive and was advised that if his conduct continued, he would be taken to jail for disorderly conduct. Trunk was issued a traffic citation for driving with a learner's permit without being accompanied by a licensed driver. Trunk was not taken into custody.
 
 
 4
 As a result of these events, on January 23, 1992, Trunk filed a complaint under 42 U.S.C. Sec. 1983 against Steven Reams, Michael Cain, Terry Risner and two unknown deputy sheriffs of Jasper County, Indiana.[2] In the complaint, Trunk alleged that the defendants violated his Constitutional rights under the 4th, 5th, 8th, and 14th Amendments by (1) illegally searching his house and his tow truck without a search warrant and without his consent; (2) abusing and harassing him with conduct unbecoming a police officer; (3) using brutal and excessive force without due process and equal protection of the law; and (4) abuse of police powers by violating his rights without justification or probable cause. Complaint, Jan. 23, 1992, at 6. The defendants filed a motion for summary judgment under Fed.R.Civ.P. 56, claiming that Trunk's complaint was barred by the applicable statute of limitations, or, in the alternative, that their actions did not support a cause of action under Sec. 1983. Trunk filed a response to the motion with an affidavit and, in addition, requested that summary judgment be entered in his favor. The district court subsequently denied Trunk's request for summary judgment and held that although the case was not barred by the statute of limitations, the defendants were entitled to summary judgment as a matter of law. This timely appeal follows.[3]
 
 
 5
 As best can be discerned from his brief, Trunk challenges the district court's grant of summary judgment only as to his claim that (1) the defendants violated his Fourth Amendment rights by searching his house; and (2) that the defendants violated his Fourth Amendment rights by using excessive force during the investigatory stop. For the reasons set forth below, we affirm the district court's grant of summary judgment.
 
 
 6
 A district court's decision to grant or deny a motion for summary judgment is reviewed de novo. Cooper v. Lane, 969 F.2d 368, 370 (7th Cir.1992) (citing Carston v. The County of Cook, 962 F.2d 749, 751 (7th Cir.1992); Pro-Eco v. Board of Comm'rs of Jay County, Ind., 956 F.2d 635, 637 (7th Cir.1992)). Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Cooper, 969 F.2d at 370. In making this determination, we must " ' "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." ' " Cooper, 969 F.2d at 371 (quoting Carston, 962 F.2d at 751 (quoting Lohorn v. Michael, 913 F.2d 327, 331 (7th Cir.1990))). Moreover, " 'the party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact.' " Cooper, 969 F.2d at 371 (quoting Big O Tire Dealers, Inc. v. Big O Warehouse, 741 F.2d 160, 163 (7th Cir.1984)). However, "summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " Cooper v. Lane, 969 F.2d 368, 371 (7th Cir.1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).
 
 
 7
 Preliminarily, we point out that Trunk was not represented by counsel in the district court proceedings and, hence, it is possible that he was not aware of the consequences of failing to properly respond to a motion for summary judgment.[4] Accordingly, we must first determine whether the requirements of Lewis v. Faulkner, 689 F.2d 100 (7th Cir.1982) have been met. In Lewis, we held that "a prisoner who is a plaintiff in a civil case and is not represented by counsel is entitled to receive notice of the consequences of failing to respond with affidavits to a motion for summary judgment." Lewis, 689 F.2d at 102; see also Timms v. Frank, 953 F.2d 281, 285 (7th Cir.1992) (extending Lewis v. Faulkner to all pro se litigants), cert. denied, 112 S.Ct. 2307 (1992). Specifically, Lewis requires that counsel for defendant include in any motion for summary judgment "a short and plain statement that any factual assertion in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion. The text of Rule 56(e) should be part of the notice, but in addition to rather than instead of the statement in ordinary English that [is] requir[ed]." Lewis, 689 F.2d at 102. The defendants provided the following notice to Trunk:
 
 
 8
 Pursuant to the holding in Lewis v. Faulkner, 689 F.2d 100 (7th Cir.1982), a copy of which his attached hereto, you are hereby notified of the following:
 
 
 9
 (1) That you have until December 22, 1992, in which to file opposition papers to the Court at 124 U.S. Courthouse, 204 S. Main Street, South Bend, Indiana, and to defense counsel at their address set forth herein, to Defendants' Motion for Summary Judgment, which was filed on December 3, 1992.
 
 
 10
 (2) That in the event you fail to file an opposition by December 22, 1992, your failure to file an opposition could result in the dismissal of your action in its entirety.
 
 
 11
 (3) That your opposition must be supported by Affidavits from yourself or others which contradict the Affidavits/Declarations submitted by Defendants in support of their motion. Your Affidavit must demonstrate that there is a genuine issue of material fact which precludes the granting of Defendants' Motion for Summary Judgment.
 
 
 12
 (4) Defendants' Motion for Summary Judgment is governed by Federal Rule of Civil Procedure Rule 56, as well as local rules 9 and 11 for the Northern District of Indiana.
 
 
 13
 (5) Pursuant to local rule 11 for the Northern District of Indiana, any affidavits or other documentary material must be accompanied with an answer and a concise "statement of genuine issues" setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.
 
 
 14
 Motion For Summary Judgment (Notice), Dec. 9, 1992. A copy of Lewis, as indicated, was enclosed with the notice.
 
 
 15
 While the defendants' statement does not contain the exact language set forth by this court in Lewis--that a defendant be informed "that any factual assertion in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion"--it nonetheless informs Trunk of the consequences of failing to respond to the defendants' motion for summary judgment with affidavits. Specifically, that in order to oppose the defendants' motion for summary judgment, Trunk must file affidavits which contradict the affidavits filed by the defendants and that his failure to oppose the defendants' motion for summary judgment could result in a dismissal of the action. Moreover, the defendants provided Trunk with a copy of Lewis itself wherein they highlighted the language in Lewis which explains the "consequence to the plaintiff of his failing to counter the defendants' affidavit with affidavits of his own...." Lewis, 689 F.2d at 101. While different in form, the defendants' notice to Trunk nonetheless effects the ends intended by the Lewis notice requirement.[5] Accordingly, we will proceed with a review of the district court's summary judgment ruling, beginning with Trunk's claim that the warrantless search of his house violated his Fourth Amendment rights.
 
 
 16
 Although "[w]arrantless searches are per se unreasonable under the Fourth Amendment," they are, of course, subject to specific exceptions. United States v. Robles, 37 F.3d 1260, 1263 (7th Cir.1994). One such exception exists when the police obtain voluntary consent "from a third party possessing common authority or joint control over the premises." United States v. Rosario, 962 F.2d 733, 736 (7th Cir.1992) (citing United States v. Matlock, 415 U.S. 164 (1974)). We have long held that "[w]hen individuals possessing common authority over an area agree to permit an entry or search, their consent " 'is valid as against the absent, nonconsenting person with whom that authority is shared." ' " Rosario, 962 F.2d at 736 (quoting United States v. Duran, 957 F.2d 499, 503 (7th Cir.1992) (quoting Matlock, 415 U.S. at 170))). The Supreme Court explained in Matlock that common authority "rests ... on mutual use of the property by persons generally having joint access or control for most purposes." Matlock, 415 U.S. at 171 n. 7.
 
 
 17
 At the time of the search, Mary Harbert had been living at Trunk's residence for over a month. Trunk Deposition, Sept. 4, 1992, at 28. Since Harbert was living in the house, she must have, at the very least, shared access to the front room of the house with Trunk--it would be difficult to imagine a scenario where an individual resides in the house of another and at the same time is prohibited from accepting visitors in the entry way to that house. See United States v. Chaidez, 919 F.2d 1193, 1202 (7th Cir.1990) ("One who shares a house or room or auto with another understands that the partner may invite strangers--that his privacy is not absolute, but contingent in large measure on the decisions of another."), cert. denied, 502 U.S. 872 (1991). Clearly, Harbert had actual authority to allow Officer Perry entry into the front room. Of course, " '[c]onsent searches are valid only if the consent was freely and voluntarily given.... The question of whether a consent was voluntary, as opposed to the product of duress or coercion, "is a question of fact to be determined from the totality of the circumstances." [Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).]' " United States v. Betts, 16 F.3d 748, 753 (7th Cir.1994) (quoting United States v. Duran, 957 F.2d 499, 502 (7th Cir.1992)). According to the uncontradicted affidavit of Perry, he never asked to be allowed entry into the house. He merely inquired about Harbert's possession of a weapon and a valid driver's license. Rather, it was Harbert who asked Perry to enter the residence so he could check the contents of her purse. Affidavit of Orville Perry, Dec. 9, 1992, at 3. Viewing the record and all inferences in a light most favorable to Trunk, there is no question that Harbert consented to Perry's entry into the house, that she had actual authority to do so, and that her consent was voluntary.
 
 
 18
 Trunk argues, however, that Officer Cain's stopping of his vehicle in his driveway, administration of the breathalyzer test, and searching of his vehicle was designed to prevent Trunk from being in his house thereby allowing Officer Perry to search the house without Trunk's consent, that this was all part of a conspiracy between the defendants and Carter to harass Trunk and violate his constitutional rights and that, therefore, Perry's search of the house was unconstitutional.
 
 
 19
 Regardless of whether this alleged conspiracy would render the otherwise consensual search unconstitutional, the record does not demonstrate that Officer Perry entered Trunk's house for any reason other than to ascertain whether Trunk had violated the law--specifically, whether Trunk had been driving with a gun and/or with a licensed driver as a passenger. Trunk argues that the record is insufficient because the defendants never complied with his request for copies of the "audio version" of Carter's calls to the Jasper County Police Department on the night of December 12, 1989. Trunk maintains that these audio tapes would have supported his claim that the events on December 12, 1989 were the result of this alleged conspiracy between the defendants and Carter to harass Trunk.
 
 
 20
 However, Trunk never filed a motion with the district court to compel discovery of the audio recordings of the phone calls under Fed.R.Civ.P. 37. More significantly, Trunk never requested a continuance on the defendants' motion for summary judgment to allow for further discovery--or, at least, to allow for the filing of a motion to compel the discovery needed--pursuant to Fed.R.Civ.P. 56(f). Not only did Trunk fail to file a Rule 56(f) motion (or otherwise request additional time for discovery) but Trunk himself filed a motion for summary judgment against the defendants in response to their motion for summary judgment, indicating that he was more than ready for the district court to make a ruling. This court has held that "when a party does not avail himself of relief under Rule 56(f), it is generally not an abuse of discretion for the district court to rule on the motion for summary judgment." King v. Cooke, 26 F.3d 720, 726 (7th Cir.1994) (citing Chicago Florsheim Shoe Store Co. v. Cluett, Peabody & Co., 826 F.2d 725, 727 (7th Cir.1987)), petition for cert. filed, Dec. 23, 1994 (No. 94-7768). There being no support for Trunk's claim that Officer Perry's entry into his residence violated a constitutionally protected right, summary judgment was properly granted.
 
 
 21
 Trunk next argues that the defendants used excessive force during his investigatory stop. In determining whether a police officer's use of force during an arrest, investigatory stop, or other seizure of a free citizen is in violation of the Fourth Amendment, we must look to " 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " McDonald v. Haskins, 966 F.2d 292, 293 (7th Cir.1992) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)); Simpkins v. Sandwich Community Hosp., 854 F.2d 215, 219 (7th Cir.1988). Here, however, there is nothing in the record demonstrating that the police used any force during their investigation of Trunk. While Trunk asserts in his appellate brief that the defendants "pushed and shoved him," Trunk's own sworn testimony establishes that the defendants caused him no physical harm. Trunk Deposition at 64, 72-73, 78. Accordingly, summary judgment was appropriate regarding Trunk's claim of excessive force.
 
 
 22
 For the reasons set forth above, we AFFIRM the judgment of the district court.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 The dispatch indicated that this tip was from an anonymous caller
 
 
 [2]
 In his response to the defendants' motion for summary judgment, Trunk identified John Doe # 1 as Orville Perry and John Doe # 2 as Terry Williams. However, since these defendants were never served, the complaint as filed against them was properly dismissed under Fed.R.Civ.P. 4
 
 
 [3]
 Before notice of appeal was filed, Trunk filed a motion to amend judgment under Fed.R.Civ.P. 59(e). This motion was denied, but not until after the notice of appeal was filed. When a Rule 59(e) motion is timely filed, it "suspends the time for appealing, and a notice of appeal filed while such notice is pending is premature and a nullity." Simmons v. Ghent, 970 F.2d 392 (7th Cir.1992) (citing Fed.R.App.P. 4(a)(4)) (although Rule 4(a)(4) was amended effective December 1, 1993, since Trunk's notice of appeal was filed on January 21, 1992, before the amendment to Rule 4, this amendment does not effect the application of Ghent to the instant action). However, since Trunk's motion was not served within ten days of entry of judgment on the docket, it did not operate to toll the time for filing notice of appeal. Accordingly, Trunk's notice of appeal was not premature
 
 
 [4]
 Trunk did respond to the defendant's motion for summary judgment, including his own affidavit. However, the affidavit was brief, conclusory, and failed to effectively counter any of the affidavits submitted by the defendants. Moreover, Trunk did not present the affidavit of his girlfriend, Mary Harbert, who Trunk maintains would testify that she did not consent to Officer Perry's search of the house
 
 
 [5]
 We also note that the defendants did not provide Trunk with a copy of the text of Rule 56(e) as recommended by Lewis, 689 F.2d at 102 ("[t]he text of Rule 56(e) should be part of the notice....") (emphasis added). However, since the defendants did provide Trunk with a copy of Lewis, we are satisfied that Trunk has been sufficiently apprised of the operation of Rule 56(e)