EXTRA ENERGY COAL COMPANY,
Appellant (Plaintiff Below),

v.

DIAMOND ENERGY AND RESOURCES, INC.; General Petroleum Products Incorporated of Gary; Chris D. Zahiralis; Gus Karas; Irene Stalmah; and Helen Zahiralis, Appellees (Defendants Below).

No. 3–1183A379.

Court of Appeals of Indiana,
Third District.

Aug. 23, 1984.

Kathryn D. Schmidt, Fred M. Cuppy, Gerald K. Hrebec, Thomas, Burke, Dyerly & Cuppy, Merrillville, for appellant.

Rhett L. Tauber, Jill L. Olson, Theodoros, Anderson & Tauber, P.C., Merrillville, for appellees.

HOFFMAN, Judge.

At the trial of this action plaintiff-appellant Extra Energy Coal Company sought judgment against the defendants-appellees Diamond Energy and Resources, Inc.; General Petroleum Products Incorporated of Gary, Indiana, Inc.; Chris D. Zahiralis; Gus Karas; Irene Stalmah; and Helen Zahiralis upon a debt incurred by Diamond Energy and Resources, Inc. The trial judge entered findings of fact and conclusions of law pursuant to Trial Rule 52 of the Ind.Rules of Procedure and judgment was rendered in favor of the defendants-appellees. Plaintiff-appellant appeals from that negative judgment.

The evidence most favorable to the appellees-defendants shows that plaintiff Extra Energy Coal Company (Extra Energy) was a Kentucky partnership engaged in the business of recycling slate pile and washing coal. Defendant Diamond Energy and Resources, Inc. (Diamond Energy) was incorporated in Indiana in 1976 as a commodities brokerage firm, involved specifically here in coal brokerage. Defendant General Petroleum Products of Gary, Indiana, Inc. (General Petroleum), an Indiana corporation established in 1955, was engaged in the distribution of refined products, including fuel oil and gasoline. The remaining defendants were shareholders of Diamond Energy and General Petroleum and held positions as directors and officers in both corporations.

In 1978, Diamond Energy, through its representative, Ben Smith, negotiated with Extra Energy to purchase coal. Prior to the sale of coal, Walter Tanner and Joseph C. Hauk, as representatives of Extra Energy, conducted an extensive investigation into the credit worthiness of Diamond Energy. A Dunn & Bradstreet report was secured on General Petroleum and bank references were obtained on General Petroleum and Chris Zahiralis, the incorporator and majority shareholder of Diamond Energy and General Petroleum. No information was available or obtained on Diamond Energy. Extra Energy, through its representatives, agreed to sell coal to Diamond Energy knowing that it had no credit history of its own but that General Petroleum and Chris Zahiralis were financially stable. Extra Energy made no request of General Petroleum or any of the individual defendants that they act as guarantors or co-purchasers nor were any representations made by any of the other defendants that they would be liable for debts incurred by Diamond Energy. Extra Energy knew at all times that Diamond Energy and General Petroleum were separate and distinct entities and that it was conducting business with Diamond Energy only. Coal was subsequently sold to Diamond Energy. Billings were mailed directly to Diamond Ener-

gy and paid until a dispute arose as to the quality of coal Diamond Energy received.

Extra Energy initiated litigation solely against Diamond Energy in Lake County Superior Court and obtained a judgment in the amount of $22,591.90. During proceedings supplemental to judgment, Extra Energy was made aware that Diamond Energy was no longer operating and had no assets. Extra Energy initiated the present suit against the defendants attempting to "pierce the corporate veil" and hold all defendants liable for the judgment returned against Diamond Energy.

In its findings of fact and conclusions of law the trial court held Diamond Energy and General Petroleum to be separate and distinct legal entities. The trial court concluded that Diamond Energy was not the mere instrumentality of General Petroleum nor the alter ego of the individual defendants. Extra Energy transacted business with Diamond Energy voluntarily and with full knowledge that it was a corporation distinct from General Petroleum and the individual defendants. The court found no evidence of fraud or bad faith attributable to any of the defendants or that Extra Energy was in any way deceived as to with whom it was dealing. Plaintiff-appellant challenges the court's findings as being insufficient, inadequate, and clearly erroneous and claims its conclusions are contrary to law.

■■■ It is clear that this Court may not reweigh the evidence presented at trial nor rejudge the credibility of the witnesses but must consider the evidence most favorable to the appellees and all reasonable inferences that may be drawn therefrom. *Ind. Dept. of State Rev. v. Estate of Cohen,* (1982) Ind.App., 436 N.E.2d 832. If there is conflicting evidence presented at trial, it is for the trier of fact to resolve the conflicts, and if there is evidence of probative value presented to support the findings of fact and conclusions of law, the judgment will not be disturbed. *Dowell v. Fleetwood,* (1981) Ind.App., 420 N.E.2d 1356. The findings and conclusions of the trial court will be construed liberally in support

of the judgment and will be upheld unless found to be clearly erroneous if after a review of the entire record the Court has a firm and definite conviction that a mistake has been made. Ind.Rules of Procedure, Trial Rule 52; Ind.Rules of Procedure, Appellate Rule 15(N); *National Fleet Supply, Inc. v. Fairchild,* (1983) Ind.App., 450 N.E.2d 1015.

■■■ Plaintiff-appellant seeks to reverse the judgment of the trial court and hold General Petroleum and the individual defendants liable for the debt of Diamond Energy. It is true that the fiction of corporate entity may be disregarded where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation. *Burger Man, Inc. v. Jordan Paper Prod.,* (1976) 170 Ind.App. 295, 352 N.E.2d 821; *Feucht v. Real Silk Hosiery Mills, Inc.,* (1938) 105 Ind.App. 405, 12 N.E.2d 1019. Such is not the case here. The evidence presented at trial shows that Diamond Energy and General Petroleum were incorporated at different times for separate and distinct purposes, commodities brokerage and distribution of petroleum products. The corporations had separate offices, telephone numbers, stationery and business cards. Each was identified separately, along with two other tenants, on the business sign outside the building. Each had its own bank accounts and corporate general ledgers for the recording of receipts and expenditures. Though several loans were made by General Petroleum to Diamond Energy, each was distinctly documented in the financial records of the respective corporations. Corporate tax returns were filed by Diamond Energy, though admittedly after the initiation of this litigation. Although the two corporations shared nearly identical directors, officers, and shareholders, this fact does not destroy the distinct and separate identities of the two corporations. *Hart, Schaffner & Marx v. Campbell,* (1942) 110 Ind.App. 312, 38 N.E.2d 895.

■■ Indiana courts are reluctant to disregard corporate identity and do so only to

protect innocent third parties from fraud or injustice when transacting business with a corporate entity. *Kokomo Veterans, Inc. v. Schick,* (1982) Ind.App., 439 N.E.2d 639; *Clarke Auto Co., Inc. v. Fyffe, etc.,* (1954) 124 Ind.App. 222, 116 N.E.2d 532; *Hart, Schaffner & Marx v. Campbell, supra; Feucht v. Real Silk Hosiery Mills, Inc., supra.* Courts will not allow a business entity to use its incorporation as a cloak or cover for fraud or illegality. *Clarke Auto Co., Inc. v. Fyffe, supra.* The evidence is unquestioned that representatives for Extra Energy conducted an extensive investigation into the financial background of Diamond Energy, General Petroleum, and Chris Zahiralis. Those representatives were aware that no financial information could be found on Diamond Energy but decided to conduct business with it nonetheless. No representations were made by General Petroleum or any of the individual defendants that they would guarantee the debts incurred by Diamond Energy. *See, Burger Man, Inc. v. Jordan Paper Prod., supra.* There was no intermingling of corporate identities or use of similar corporate names. *See, Clarke Auto Co., Inc. v. Fyffe, supra.* No agency relationship existed whereby General Petroleum and the individual defendants would be liable for debts incurred by Diamond Energy. *See, Urbanational Develprs., Inc. et al. v. Shamrock,* (1978) 175 Ind.App. 416, 372 N.E.2d 742. A principal representative for Extra Energy admitted at deposition and reaffirmed at trial that it was his belief that Diamond Energy and General Petroleum were, in fact, separate entities, not incorporated for the purpose of defrauding creditors.

There being no evidence of fraud or misrepresentation, the fact that Extra Energy's decision to do business with Diamond Energy was ultimately a poor one does not raise these circumstances to the level of unfairness, fraud, or injustice necessary to hold General Petroleum and these individuals liable for the debts of Diamond Energy.[1]

Affirmed.

STATON, P.J., and GARRARD, J., concur.

---

1. Application of the concept of constructive fraud, as requested by the plaintiff-appellant, is unwarranted in light of the absence of misrepresentation or deception.