BAESLER'S SUPER–VALU, Appellant,

v.

INDIANA COMMISSIONER OF LABOR ex rel. Lotte L. BENDER, Appellee.

No. 84A01–8603–CV–73.

Court of Appeals of Indiana, First District.

Nov. 26, 1986.

App. 243, 363 N.E.2d 1018; *Maddox v. Yocum* (1944), 114 Ind.App. 390, 52 N.E.2d 636.

Ronald C. Smith, Donn H. Wray, Stewart Irwin Gilliom Meyer & Guthrie, Indianapolis, for appellant.

Robert D. Hepburn, Cox, Zwerner, Gambill & Sullivan, Terre Haute, for appellee.

ROBERTSON, Presiding Judge.

Defendant-appellant Baesler's Super-Valu (Baesler's) appeals an adverse judgment rendered in the Vigo County Small Claims Court in favor of the Indiana Commissioner of Labor. The suit was brought on behalf of Lotte Bender (Bender), a former employee of Baesler's, for vacation pay.

We affirm.

The facts relevant to our decision and favorable to the judgment are undisputed. Lotte Bender worked as a cashier for Baesler's Super-Valu in Sullivan, Indiana, continuously from June 12, 1978 until March 8, 1984. In October of 1983, the labor contract which governed the relations of the parties expired. Thereafter, Baesler's and its employees expressly allowed the agreement to renew itself as provided by Article XXXI of the contract until March 8, 1984, when the labor union of which Bender was a member went out on strike. Article XI of the agreement contained the following provisions with respect to vacations:

A. All employees, unless otherwise exempted herein, shall receive an annual vacation with full pay therefore as follows:

After one (1) year of continuous employment—one (1) week vacation; After two (2) years of continuous employment—two (2) weeks of vacation;

After eight (8) years of continuous employment—three (3) weeks vacation;

\*  \*  \*  \*  \*  \*

B. Pay for each week of vacation period shall mean pay for the number of hours regularly worked by the employee as a regular workweek during the twelve (12) months next preceding his vacation multiplied by the rate applicable to the hours so scheduled. Provided, however, that

the vacation pay for each week of vacation shall not be less than the average weekly earnings of the employee during the twelve (12) months preceding the employee's vacation.

Vacation pay shall be paid to the employee prior to the start of his vacation, . . .

\* \* \* \* \* \*

G. Upon termination of employment after one (1) year of employment, the employee shall be paid earned vacation pay equal to the sum of the following:

(A) Annual vacation pay then due the employer (sic) but unpaid; and (B) Vacation pay computed in relation to that which would have been due the employee on the next anniversary date of employment, proportionately adjusted to the number of months employed since the last anniversary of employment, provided the employee is not discharged for dishonesty.

Bender accrued 92 hours of vacation pay for the period of June, 1982 to June, 1983. She took her vacation for that period in July and August, 1983. Payroll summaries submitted by Baesler's dated July 20, 1983, and August 10, 1983, showed that Bender was paid $276.00 for 46 regular hours for each of the weeks reflected in the summaries. Bender testified that during the period of June 12, 1983 through March 8, 1984, she worked an average of 44 hours per week, one 40–hour and one 48–hour week in a two-week period, and was compensated at a rate of six dollars per hour. The small claims court made no findings of fact or law, but awarded Bender damages in the amount of $1224.00 on her complaint for accrued wages, together with attorney's fees of $450.00.

Baesler's presents four issues for our review. We have consolidated these issues into two:

1. Did the trial court err in finding that an employee, whose employment terminates after a union negotiated employment contract has expired, is entitled to accrued vacation pay?

2. Did the trial court properly invoke IND.CODE 22–2–5–1 & 2 in awarding enhanced damages and attorney's fees?

ISSUE ONE

■ Baesler's maintains that no common law right to vacation pay exists; any entitlement to such compensation must emanate from contract. According to Baesler's, its unionized employees abrogated any right to vacation pay derived from contract by going out on strike. Consequently, the trial court erred in finding that Bender was entitled to compensation because her own actions as a union member participating in the strike nullified her basis for claiming relief. Baesler's cites our decision in *Die & Mold, Inc. v. Western*, (1983) Ind.App., 448 N.E.2d 44 in support of its argument. We do not concur in its interpretation of our decision.

In *Die & Mold, Inc. v. Western*, we considered whether, as a matter of law, vacation pay is an element of an employee's labor. 448 N.E.2d at 45. We reached our decision in the context of an employment relationship which began with an oral offer to pay vacation, and, a termination of employment which occurred prior to the employee's anniversary date. In that case, the trial court specifically found that the employer, Die & Mold, had no policy pertaining to the payment of accrued vacation pay upon termination of an employee's employment. Accepting that finding as a basis for discussion, we held that vacation pay is a part of regular compensation: additional wages which are earned weekly with only the time of payment deferred. *Id.* at 48. Because an employee is entitled to wages up to the time of termination, we concluded that, as a matter of law, the employee would also be entitled to a *pro rata* share of vacation pay to the time of termination, provided no agreement or published policy existed to the contrary, *id.* and in light of the fact that an agreement to pay vacation had been made at the time of hiring.

Thus, our decision in *Die & Mold* involved basic principles of contract law. Once a trial court finds that an agreement

to give vacation pay was made, and the services are rendered by the employee as promised, the trial court must find, as a matter of law that the right to receive compensation is "vested". *See, id.,* and cases cited therein. The term "vested" is used ordinarily to indicate that some person or legislature has no legal power to affect the primary right created when the contract was made. *See,* 3A Corbin on Contracts, Ch. 39 § 742 at 453 (1960).

Moreover, we can find nothing in the contract which would indicate that the parties intended their relationship to vary from the common law as established in *Die & Mold.* We are unable to identify any language in the contract which would make a strike by the employees operative to extinguish their right to future performance by their employer according to the terms of the contract.

Applying these principles to the present case, it is apparent that Bender was entitled to compensation as a matter of law, even after the expiration of the negotiated union contract. Bender demonstrated that at the time of her anniversary with Baesler's in 1983, a written contract was in effect, by which Baesler's had agreed to pay vacation benefits based upon length of service, and had specifically agreed that accrued benefits would be paid upon termination. The only condition placed upon receipt of accrued vacation benefits at the termination of Bender's employment was the requirement that she not be discharged for dishonesty. The contract contained no provision conditioning the payment of accrued vacation benefits at termination on the passing of the employee's anniversary date. As in *Die & Mold,* no evidence was presented which would indicate that a change in policy had been negotiated by management in a bargained for exchange

or even that any such change in policy had been communicated to the employees. In fact, Baesler testified that the company had agreed to extend the terms and provisions of the contract until a new contract could be reached. Bender continued to perform the services required of her after the expiration of the written contract. She is entitled to the additional wages she earned over this period. To condition the receipt of these benefits accruing under the old contract on the ratification of a new contract would be plainly coercive. *N.L.R.B. v. General Time Corp.,* (7th Cir.1981), 650 F.2d 872, 875. *Accord, N.L.R.B. v. Great Dane Trailers, Inc.,* (1967) 388 U.S. 26, 32, 87 S.Ct. 1792, 1796, 18 L.Ed.2d 1027. (Company's refusal to pay vacation benefits to strikers, coupled with payments to nonstrikers, was discrimination in its simplest form).

ISSUE TWO

Baesler's next contends that the trial court erred in calculating the award in that the judgment exceeds double the highest possible accrued earnings supported by the evidence. We note that because the trial court's judgment was general in nature and did not specify how calculations were made, or that it was premised upon I.C. 22-2-5-1 and 2, we assume that the trial court weighed the equities properly, and we presume that the judgment is premised upon findings which are supported by the evidence. We must affirm unless the appellant has shown an abuse of discretion, or that the decision of the trial court cannot be sustained upon any legal theory. *City of Logansport v. Remley,* (1983) Ind.App., 453 N.E.2d 326, 328, 329. Assuming the trial court found a base award within the range supported by the evidence, i.e. $396.00–469.00 [1], it is apparent that the tri-

---

1. Bender also argues that a full award of $552.00 would be appropriate based upon the custom and dealings of the parties, and at the trial contended that she was entitled to a week's severance pay in addition to vacation pay, amounting to $676.00 before enhancement. While Bender testified that other employees had received vacation pay prior to their anniversary dates at the time of the strike, there is no evidence that these employees received 100% of their salaries as vacation pay, or that Bender had ever received 100% of her vacation benefits prior to her anniversary date. With respect to the question of severance pay, Article XXVI of the contract provides in part that an employee classed as full time who is permanently laid off due to a discontinuance of the job, store closing, or reduction in force, shall be entitled to one (1)

al court, in reaching its total award of $1224.00, applied a statutory enhancement as the appellee requested such that the total amount of the *enhancement* equalled double the amount of wages due. We must therefore consider whether the trial court abused its discretion in applying I.C. 22–2–5–1 and 2, and awarding what, in effect, amounts to treble damages.

■ The right of a court to assess punitive damages and attorney's fees because an employer has withheld accrued wages is entirely statutory [2]. *Standard Liquors v. Narcowich,* (1951) 121 Ind.App. 600, 99 N.E.2d 268, 269. I.C. 22–2–5–1 and 2 provide:

> Sec. 1. Every person, firm, corporation or association, their trustees, lessees or receivers appointed by any court whatsoever doing business in this state shall pay each employee thereof at least semimonthly or bi-weekly, if requested, the amount due such employee and such payment shall be made in the lawful money of the United States or by negotiable check, draft or money order and any contract to the contrary shall be void.

> Such payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of such payment: Provided, That nothing herein shall be taken to prevent payments being made at shorter intervals than herein specified nor to repeal any law providing for such payments: Provided, however, That should any employee voluntarily leave his employment, either permanently or temporarily, such employer shall not be required to pay such employee any amount due such employee until the next usual and regular day for payment of wages, as established by such employer: Provided, further, That in the event such employee leaves his employment voluntarily, and without his whereabouts or address being known to such employer, such employer shall not be subject to the provisions of IC 1971, 22–2–5–2 of this chapter, unless and until ten (10) days have elapsed, after such employee has made a demand for such wages due him, or has furnished such employer with his address, where such wages may be sent or forwarded to him.

week's notice *or* one (1) week's pay in lieu of notice, with certain exceptions including dishonesty, gross insubordination, drinking on the job and willful misconduct. While there is evidence in the record of the store's closing six weeks after the strike was initiated, evidence that Bender did not return to work within that period and evidence that she believed based upon media coverage, she had been fired, no testimony or exhibits were introduced on the giving of notice, and Bender presented no evidence that *she* had in fact been laid off due to the store's closing. Moreover, a review of the record discloses that Baesler's, on cross-examination of Bender, began to question her about the claim for severance pay. Bender's counsel objected and no further evidence was taken on this point. Bender's small claims complaint made only a general request for unpaid wages. Therefore, while we concur with Bender that Trial Rule 15(B) promotes relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleading, *Bank of New York v. Bright,* (1986) Ind.App., 494 N.E.2d 970, 974, we do not find the evidence supports a claim for severance pay, and thus, the theory was not properly before the trial court.

In addition, we observe that Bender has not presented argument on the applicability of IND.

CODE 22–2–5–1 and 2 to separation pay in lieu of notice. Application of these statutory provisions to customary separation pay arrangements has not yet been addressed by the Indiana courts. *See, Wilson v. Montgomery Ward,* (N.D.Ind., 1985), 610 F.Supp. 1035. (Statute defining "wages" for purposes of 1939 Act applies to regular compensation akin to wages paid on a regular, periodic basis and measured in relation to time worked.) In light of the fact that we are able to sustain the trial court's decision on another theory, and Bender has not raised by statement in opposition, pursuant to Ind.Rules of Procedure, Trial Rule 59(E) her claim for severance pay, we believe it is not necessary for us to consider the applicability of I.C. 22–2–5–1 to severance pay at this time.

2. The award in this case could have been grounded, however, on either of two possible theories of recovery. Our finding that Bender was entitled to treble damages pursuant to I.C. 22–2–5–2 makes it unnecessary to consider Baesler's contention that Bender has failed to establish, by clear and convincing evidence, that Baesler's conduct exhibited elements of oppression. *See, Bank of New York v. Bright,* 494 N.E.2d at 975–976.

Sec. 2. Every such person, firm, corporation, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

I.C. 22–2–5–1 serves as a statutory gap-filler when an employer and employee have not negotiated the manner by which wages earned are to be paid. *See, American Bus Lines v. Page*, (1978) 176 Ind.App. 5, 373 N.E.2d 928, 934. Prototypes of this statute, which prescribed a "method for insuring that wage earners receive prompt return for their labor," *id.*, had been held unconstitutional as denying the ability of the parties to contract, unless the statutes provided for a timely demand for payment on a semi-monthly or bi-weekly basis. *See, Seelyville Coal & Mining Co. v. McGlosson*, (1906) 166 Ind. 561, 77 N.E. 1044; *State v. Martin*, (1923) 193 Ind. 120, 139 N.E. 282, and cases cited therein. The strict rule has thus emerged that an employee seeking exemplary damages in addition to unpaid wages pursuant to a statute fixing the time for payment of wages must show a clear violation of the statutory obligation, and that a timely demand for payment semi-monthly or bi-weekly had been made of the employer. *Standard Liquors*, 99 N.E.2d at 269. A request or demand for payment of wages strictly complies with the requirements of the statute when it is "directly related to the contract of employment" and is made "prior to or concurrent with the period of employment ... and not after a wage dispute has arisen." *Palmer*

*v. Stockberger*, (1963) 135 Ind.App. 263, 271, 193 N.E.2d 384; *Standard Liquors*, 99 N.E.2d at 269–270.

■ Relying upon those cases which have strictly construed the demand for semi-monthly or bi-weekly payment of wages requirement of the statutes pre-dating I.C. 22–2–5–1, Baesler's argues that I.C. 22–2–5–1 is inapplicable to the instant case because Bender's demand for vacation pay was not made prior to, or concurrent with the period of employment but only after a wage dispute had arisen. Baesler's is, in essence, asking us to extend the strict requirements for a demand beyond the timing of payment to the situation where an employee voluntarily leaves employment and seeks unpaid accrued wages, governed by the latter portion of I.C. 22–2–5–1. This we decline to do. The legislature chose not to require a demand for payment upon voluntary termination, explicitly providing that payment not be due until the next usual and regular day for payment of wages. Baesler's has not presented any reason, grounded in the Constitution, for reviewing the appropriateness of that legislative judgment. Moreover, Baesler's does not contend that the statute interfered with its ability to contract with its employees with respect to the *timing* of payment of vacation pay; instead, Baesler's challenges *any entitlement* to vacation benefits by its former striking employee. Thus, the constitutional considerations which motivated the courts to strictly construe the demand requirement are not at work here. We are therefore left to consider whether the evidence supports the application of I.C. 22–2–5–1 to this claim.

■ A review of the evidence most favorable to the appellee reveals a clear violation of the statutory mandate to pay on the next usual and regular day for payment of wages. Bender testified that she asked for her vacation pay and was refused by her employer because she voluntarily terminated her employment relationship with Baesler's prior to her anniversary date. Bender also testified that she sought assistance

from the Commissioner of Labor when Baesler's refused to pay the accrued benefits as she requested. Her claim with the Division of Labor was filed on August 20, 1984, a full five months after Bender's last day of work. The Commissioner of Labor initiated this litigation nearly a year later, on July 2, 1985. There was no evidence that Bender's whereabouts were unknown to her employer. Accordingly, the trial court's conclusion that Bender had not been paid wages as required by I.C. 22–2–5–1 was well supported by the evidence. The failure to pay employees in this manner activates the penalty provision in I.C. 22–2–5–2, without any further showing. *See, Wilson v. Montgomery Ward,* (N.D. Ind., 1985) 610 F.Supp. 1035, 1038; *also, Flex Let Corp v. Vogel,* (1963) 134 Ind.App. 445, 186 N.E.2d 696, 698 (employee who took advantage of privilege of bargaining time for payment not entitled to penalties and attorney's fees which former statute provided for those persons who did bring themselves within statute's purview); *Seelyville Coal & Mining,* 77 N.E. at 1047 (employer in position to prevent assessment of exemplary damages by tendering amount actually due employee before expiration of prescribed limit. Essential purpose of legislature, in providing assessment of damages, to enforce performance of duty enjoined upon employer to timely pay employee earnings); *Die & Mold, Inc. v. Western,* 448 N.E.2d at 48 (intent of statute clear; no need for rules of construction to determine that I.C. 22–2–4–4, applicable to corporations, etc. engaged in mining, quarrying, manufacturing, entitles employee to penalty and attorney's fees for withholding vacation pay).

■ Having determined that I.C. 22–2–5–1 and 2 apply in this case, Baesler's next asks us to consider whether the court properly calculated the amount of penalty, and whether its award of $450 in attorney's fees was appropriate. As an initial matter, we concur with Bender in her contention that I.C. 22–2–5–2 is ambiguous with respect to the limitation it imposes on the amount of liquidated damages. We will not construe the statute at this time, as

Baesler's has not presented cogent argument on the statute's construction, or cited authority for our review, and has thus waived this issue. A.R. 8.3(A)(7). *May v. Blinzinger,* (1984) Ind.App., 460 N.E.2d 546, 551, *trans. denied.* We observe, however, that the Indiana Supreme Court, considering the constitutionality of a statute containing the clause "not exceeding double the amount of wages due", approved an award of a penalty of twice the amount of wages claimed, in addition to the award of unpaid wages. In that case, the court concluded that the statute was reasonable in that the amount of damages constituting exemplary damages allowed to be assessed could not exceed double the amount of wages due the employee, and thus, such an award of exemplary damages was neither excessive nor oppressive. *See Seelyville Coal & Mining v. McGlosson,* (1906) 166 Ind. 361, 77 N.E. 1044, 1047. If in fact the trial court relied upon this decision, we would have difficulty concluding its outcome was contrary to law.

■ Baesler's final contention is that there is no evidence in the record to support the amount of attorney's fees requested by Bender. We have little difficulty concluding that the award of attorney's fees involved in this routine small claims case constituted a relatively modest sum, of which judicial notice could be taken as to its reasonableness, and no evidence need have been presented. *See, Berkemeier v. Rushville Nat. Bank,* (1982) Ind.App., 438 N.E.2d 1054, 1058.

■ The appellee's request for appellate attorney's fees is denied. While it is well settled that one is entitled to attorney's fees when provided for by statute, *Templeton v. Sam Klain & Son, Inc.,* (1981) Ind., 425 N.E.2d 89, 91, the preferred procedure for requesting appellate fees is to timely file a petition for allowance of attorney's fees with the trial court after appellate proceedings have been initiated. *Id.; Radio Distributing v. National Bank & Trust Co.,* (1986) Ind.App., 489 N.E.2d 642. However, as Bender filed neither a

separate petition with her brief, nor a petition with the trial court, her motion for appellate fees is not properly before the court. Thus, on the record as it stands, we cannot grant the additional relief requested. *Willsey v. Hartman,* (1971) 150 Ind. App. 485, 276 N.E.2d 577.

Judgment affirmed in its entirety.

RATLIFF and NEAL, JJ., concur.