**Greg GURNIK and Jo Lynn Gurnik (Dickinson), Appellants–Plaintiffs,**

v.

**M. Monroe LEE, the Travel Trade, Inc., and Lee Corporation of Indiana, Inc., Appellees–Defendants.**

No. 49A02–9007–CV–432.

Court of Appeals of Indiana, Second District.

March 3, 1992.

David F. McNamar, Patrick M. O'Brien, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellants-plaintiffs.

John L. Stewart, Michele J. Calderon, Klineman, Rose, Wolf & Wallack, Indianapolis, for appellees-defendants.

BUCHANAN, Judge.

## CASE SUMMARY

Plaintiff-appellant Jo Lynn Dickinson (Dickinson) appeals from the trial court's determination that the funds owed to her by defendant-appellee The Travel Trade, Inc. (Travel) were not "wages" under Ind. Code 22-2-5-2 (1988), and she also claims that the trial court erred when it refused to pierce Travel's corporate veil to reach defendants-appellees M. Monroe Lee (Lee) and the Lee Corporation of Indiana, Inc. (Lee Corp.).[1]

We affirm in part and reverse in part.

## FACTS

The facts most favorable to the trial court's judgment reveal that in October, 1983, Dickinson, Gurnik, Lee and Lee's wife entered into an agreement to organize a corporation to operate as a travel agency. They organized Travel, with the Lees owning 75% of the stock and Gurnik owning the remaining 25%. Lee agreed to provide the capital for the operation of Travel.

Dickinson executed an employment agreement, assuming the role of president of Travel. The agreement provided that she would receive an annual salary of $30,-000, payable in weekly installments, and a minimum annual bonus of $5,300, or a percentage of the net profits for the year. The agreement provided that the bonus would be pro rated if Dickinson was not employed at the end of the year; the bonus was not conditioned on whether Travel was profitable.

The Lee Corp. was a general construction contractor, and Lee was its sole shareholder. Travel operated as a travel agency from October 1983 until 1987. During its operation, Lee personally loaned Travel approximately $191,000 and the Lee Corp. loaned it approximately $200,000.

Dickinson was paid her $5,300 bonus for 1984. She resigned from Travel in October, 1985, and her last day of employment was in December, 1985. Dickinson was not paid her bonus for 1985. Travel never made a profit and ceased operation in 1987. Its Wisconsin office was sold for $30,000 and various pieces of office equipment were sold for $2,000. The funds were applied to Travel's loans with Lee and the Lee Corp.

Dickinson filed a claim against Travel, Lee and the Lee Corp. [hereinafter collectively referred to as Appellees], seeking her 1985 bonus, plus damages and attorney's fees in accordance with IC 22-2-5-2. The trial court granted a partial summary judgment in favor of the Appellees, determining that the bonus was not a "wage" as used in IC 22-2-5-2 and that Dickinson was not entitled to damages and attorney's fees. After a bench trial, pursuant to Dickinson's motion, the trial court entered findings of fact and conclusions of law, incorporating its earlier partial summary judgment, and awarding Dickinson $5,300.

The trial court's initial order provided that Dickinson's judgment was against Lee. After the trial court granted the Appellees' motion to reconsider its findings, it issued new findings and conclusions on March 29, 1990, which provided that Dickinson's judgment was against Travel.

## ISSUES

1. Whether the trial court erred when it determined Dickinson's bonus was not a "wage?"
2. Whether the trial court erred when it entered Dickinson's judgment against Travel?

## DECISION

ISSUE ONE—Did the trial court properly conclude that Dickinson's bonus was not a "wage?"

---

1. Plaintiff-appellant Greg Gurnik (Gurnik) was dismissed as a party on March 12, 1991, after the filing of a stipulation of dismissal.

PARTIES' CONTENTIONS—Dickinson argues that the bonus was part of her regular compensation and was therefore a "wage" as contemplated by IC 22–2–5–2. Travel replies that caselaw provides that bonuses are not "wages" as that term is used in the statutes.

CONCLUSION—The trial court erred when it determined the bonus was not a "wage."

■ To decide this issue we must gingerly pick our way through two relevant statutes. The first one is IC 22–2–5–2 (1988) [hereinafter referred to as Section 2], which provides:

"Every such person, firm, corporation, or association *who shall fail to make payment of wages* to any such employee as provided in section 1 of this chapter *shall, as liquidated damages for such failure, pay* to such employee for *each day* that the amount due to him remains unpaid *ten percent (10%) of the amount* due to him *in addition* thereto, *not exceeding double the amount of wages due*, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court *shall tax* and assess *as costs* in said case *a reasonable fee for the plaintiff's attorney* or attorneys." (Emphasis supplied).

The second one is IC 22–2–5–1 (1988) [hereinafter referred to as Section 1] which provided:

"Every person, firm, corporation or association, their trustees, lessees or receivers appointed by any court whatsoever doing business in this state *shall pay each employee thereof at least semimonthly* or bi-weekly, if requested, *the amount due such employee* and such payment shall be made in the lawful money of the United States or by negotiable check, draft or money order and any contract to the contrary shall be void. Such payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of such

payment: Provided, That nothing herein shall be taken to prevent payments being made at shorter intervals than herein specified nor to repeal any law providing for such payments: Provided, however, That should any employee voluntarily leave his employment, either permanently or temporarily, such employer shall not be required to pay such employee any amount due until the next usual and regular day for payment of wages, as established by such employer: Provided, further, That in the event such employee leaves his employment voluntarily, and without his whereabouts or address being known to such employer, such employer shall not be subject to the provisions of IC 1971, 22–2–5–2 [Section 2] of this chapter, unless and until ten (10) days have elapsed, after such employee has made a demand for such wages due him, or has furnished such employer with his address, where such wages may be sent or forwarded to him." (Emphasis supplied).

Unfortunately these statutes do not provide a definition for "wages" as that term is used in Sections 1 and 2. Dickinson relies upon this court's decision in *Licocci v. Cardinal Associates, Inc.* (1986), Ind. App., 492 N.E.2d 48, *trans. denied*, to support her claim that the unpaid 1985 bonus constituted unpaid wages as contemplated by Sections 1 and 2.

In *Licocci*, we considered whether accumulated commissions were wages under Sections 1 and 2. The employees in *Licocci* received weekly draws from their accumulated commissions, with a year-end draw settlement if the employees' total annual commissions exceeded their weekly draws. Recognizing that Sections 1 and 2 did not define "wages," we looked to other statutory definitions of wages to determine whether the employees were entitled to damages for unpaid commissions. After examining worker's compensation law, employment security law, IC 22–2–9–1, and Black's Law Dictionary's definition of wages, we concluded that the commissions were wages pursuant to Sections 1 and 2.

Although not necessarily conclusive, IC 22-2-9-1(b), relating to wage claims, does offer a definition of wages: "The term 'wages' means all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount."

Also instructive is our decision in *Baesler's Super-Valu v. Ind. Comm'r of Labor* (1986), Ind.App., 500 N.E.2d 243. There, we determined that the employer's failure to pay the employee's vacation pay warranted damages and attorney's fees in accordance with Section 2. We relied in part on the previous decision in *Die & Mold, Inc. v. Western* (1983), Ind.App., 448 N.E.2d 44, which decided that vacation pay constituted wages under IC 22-2-4-4. (IC 22-2-4-1 and 22-2-4-4, relating specifically to mining and manufacturing businesses, provide for periodic payment of wages and penalties similar to the provisions of Sections 1 and 2). In *Die & Mold*, we concluded that vacation pay was an additional wage, earned each week but deferred until a later time.

Travel attempts to counter Dickinson's arguments with *Wilson v. Montgomery Ward & Co.* (N.D.Ind., 1985), 610 F.Supp. 1035. In *Wilson*, the court was faced with a claim for damages and attorney's fees under Section 2 for the employer's failure to pay severance pay. The court characterized the severance pay as a "bonus" that did not constitute regular compensation so that severance pay was not a "wage" within the meaning of Sections 1 and 2 and that "wages" under Sections 1 and 2 were "something akin to the wages paid on a regular, periodic basis for regular work done by the employee...." *Id.* at 1038. It then observed that the severance pay bore no relation to the time worked and that it was something extra to the employee's regular compensation.

In *Jeurissen v. Amisub, Inc.* (1990), Ind. App., 554 N.E.2d 12, *trans. denied*, this court accepted *Wilson*'s definition of "wages" as "appropriate under the facts of this case...." *Jeurissen, supra* at 13. In

*Jeurissen*, it was decided that a bonus based on the financial success of the employer, and which was not tied to regular work done on a periodic basis by the employee, was not a wage subject to damages and attorney's fees for nonpayment pursuant to Section 2.

However, contrary to Travel's position, the law in Indiana does not exclude a bonus as wages simply because it is denominated as a "bonus." In *Todd v. Stewart* (1991), Ind.App., 566 N.E.2d 1077, *trans. denied*, we found that the trial court had erred when it failed to include the employee's May bonus in its calculations of the wages subject to the penalties of Section 2. Our conclusion was not hindered by the fact the compensation was referred to as a "bonus." Further, the mechanical exclusion of all compensation labeled as a "bonus" from the scope of Sections 1 and 2 would allow employers to escape the statutory penalties by merely labeling compensation as "bonuses." So we will look to the substance of the compensation Travel agreed to pay Dickinson to determine whether the 1985 bonus was a wage.

Our examination of the agreement between Travel and Dickinson leads us to conclude that the bonus was a wage as that term is used in Sections 1 and 2. Dickinson's bonus was compensation in addition to her salary, related to the amount of time she worked (as it was to be paid pro rata if she was not employed at the end of the year), which was paid on a regular, periodic basis. It is similar to the vacation pay considered in *Die & Mold* in that the bonus was a deferred payment of compensation which accrued during Dickinson's tenure with Travel.

Unlike the compensation considered by the courts in *Wilson* and *Jeurissen*, Dickinson's bonus related directly to the time she worked. Unlike the severance pay in *Wilson*, the bonus was paid on a regular, periodic basis. Also, the minimum bonus was not predicated on the financial success of Travel as was the bonus considered in *Jeurissen*. The fact that the bonus was paid on an annual period is similar to the annual draw settlement feature of the commis-

sions considered in *Licocci*, and is not inconsistent with the deferred compensation features of vacation pay. In short, Dickinson's bonus was paid on a regular periodic basis for her regular work, and is therefore a "wage" within the scope of Sections 1 and 2.

Thus, Dickinson is entitled to treble damages and attorney's fees in accordance with Section 2. *Fardy v. Physicians Health Rehab. Serv., Inc* (1988), Ind.App., 529 N.E.2d 879.

ISSUE TWO—Did the trial court err when it entered judgment against Travel?

PARTIES' CONTENTIONS—Dickinson argues that the trial court should have pierced Travel's corporate veil and entered judgment against Lee or the Lee Corp. The Appellees respond that Travel operated as a separate and distinct organization and that piercing its corporate veil is not warranted.

CONCLUSION—Judgment was properly entered against Travel.

Dickinson's desire to own a judgment against Lee or the Lee Corp. rather than Travel, probably arises from the evidence adduced at trial demonstrating that Travel was a business entity without assets that was heavily indebted to Lee and the Lee Corp. She seeks a deep pocket to satisfy her judgment for unpaid wages.

■ Generally, Indiana courts are reluctant to disregard corporate entity, but we will do so to protect innocent third parties from fraud or injustice. *Stacey–Rand, Inc. v. J.J. Holman, Inc.* (1988), Ind.App., 527 N.E.2d 726; *State v. McKinney* (1987), Ind.App., 508 N.E.2d 1319, *trans. denied; Extra Energy Coal Co. v. Diamond Energy* (1984), Ind.App., 467 N.E.2d 439.

■ A party seeking to pierce the corporate veil bears the burden of establishing that the corporation was so ignored, controlled or manipulated that it was merely the instrumentality of another, and that the misuse of the corporate form would constitute a fraud or promote injustice. *See Chicago Florsheim Shoe Store Co. v. Cluett, Peabody & Co., Inc.* (7th Cir.1987), 826 F.2d 725; *United States v. Van Diviner*

(10th Cir.1987), 822 F.2d 960; *Orloff v. Allman* (9th Cir.1987), 819 F.2d 904; 18 C.J.S. *Corporations* § 18 (1990).

■ When a trial court decides an issue adversely to a party who has the burden of proof on that issue, we are not free to reweigh the evidence or reassess the credibility of witnesses. We may only reverse the trial court if evidence does not conflict and leads solely to a conclusion opposite that reached by the trial court. *Get–N–Go, Inc. v. Markins* (1989), Ind., 544 N.E.2d 484; *In re Marriage of Wooten* (1990), Ind.App., 563 N.E.2d 636.

■ Dickinson points to the fact that Lee and the Lee Corp. loaned Travel substantial amounts of money and the fact that the proceeds from the sale of Travel's assets were distributed to Lee or the Lee Corp. as supportive of her claim that Travel's separate corporate identity should be pierced. No authority is cited and we have found none even remotely suggesting that the mere loaning of funds by a stockholder to a corporation is sufficient to justify piercing the corporate veil.

In *Stacey–Rand, supra,* we observed: "While no one talismanic fact will justify with impunity piercing the corporate veil, a careful review of the entire relationship between various corporate entities, their directors and officers may reveal that such an equitable action is warranted." *Id.* at 728.

Dickinson has presented no evidence that Lee used Travel as his alter ego or that he disregarded its corporate form by casually mixing funds or failing to keep separate records for Travel. The evidence at trial demonstrated that Travel had a board of directors and that regular meetings of the board were held, during which minutes were kept. *Record* at 1030–31. Travel maintained its own separate bank accounts and filed separate tax returns. *Record* at 1034. The loans made to Travel by Lee and the Lee Corp. were reflected in Travel's corporate accounting records as well as in Lee's and the Lee Corp.'s separate accounting records. *Record* at 1035. The evidence here is not unlike that which we

considered in *Extra Energy, supra,* when we concluded the appellant had failed to present sufficient evidence to warrant piercing the corporate veil. We cannot conclude that merely loaning funds, with nothing more, is sufficient to disregard a corporation's existence. As Dickinson failed to meet her burden of proof the trial court properly entered judgment for Dickinson against her employer, Travel.

Judgment reversed and remanded for further proceedings consistent herewith.

CHEZEM, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

It is my view that a bonus, whether or not tied to a particular level of profit, does not constitute wages.

*Baesler's Super–Valu v. Indiana Commissioner of Labor* (1986) 1st Dist.Ind. App., 500 N.E.2d 243, and *Die & Mold, Inc., v. Western* (1983) 1st Dist.Ind.App., 448 N.E.2d 44, are not to the contrary. Both cases involved vacation pay earned on a regular and periodic basis for each week actually worked.

In reality, the seeds for my dissent are contained within *Die Mold* itself. *Die Mold* drew a very clear and very specific distinction between vacation pay and bonuses. The court held that the two are treated differently because vacation pay is part of regular compensation. 448 N.E.2d at 46–47.

Furthermore, it is of significance that our First District which decided both *Die Mold* and *Baesler's Super–Valu,* also decided the recent case of *Jeurissen v. Amisub, Inc.* (1990) 1st Dist.Ind.App., 554 N.E.2d 12, *trans. denied.* Finding no impediments within its earlier *Die Mold* and *Baesler's Super–Valu* decisions, the court quoted with approval from *Wilson v. Montgomery Ward & Co.* (1985) N.D.Ind., 610 F.Supp. 1035, holding that a bonus is the "something extra" referred to in *Wilson,* not tied to compensation for regular work done on a periodic basis which pursuant to statute would have been payable, if requested, on a twice monthly basis.

Here the bonus was not payable on any periodic basis nor was it tied to any qualitative or quantitative degree of performance by Dickinson. Thus, the bonus payable here is unlike the commissions payable in *Licocci v. Cardinal Associates, Inc.* (1986) 1st Dist.Ind.App., 492 N.E.2d 48, *trans. denied,* or the vacation pay involved in both *Die Mold* and *Baesler's Super–Valu.* Commissions are directly related to the employee's performance, usually a volume of sales; while, as earlier noted, vacation pay is earned on a periodic and continuing basis and is directly tied to the time worked.

The majority here finds significance in the fact that the bonus was to be pro-rated if Dickinson was not employed at the end of the year, concluding that the bonus was thus tied to the amount of time she worked. I disagree. Dickinson was entitled to the bonus at year's end regardless of the number of hours or days worked during the year of her employment. It is inaccurate to say that the bonus was related to "the amount of time she worked". Maj. opinion at 709. It is accurate, however, to say that the bonus was tied to the *fact* of Dickinson's employment at year's end. The same may be said to apply to virtually all employee benefits—accrued vacation, insurance, parking privileges and other emoluments—which are not wages.

Although Dickinson's bonus was not tied to profits it was nevertheless not a portion of her wages. The trial court so found from the evidence before it. We should not substitute our categorization of the bonus under the guise that it is solely a question of law. To be sure, what is and what is not a wage is a legal question. But the answer to the question depends upon the surrounding circumstances and the context in which the bonus is to be paid. The trial court here did not unreasonably conclude that the $5,300 was not a wage so as to trigger the punitive and attorney fee provisions of I.C. 22-2-5-2.

The majority understandably cites *Todd v. Stewart* (1991) 3d Dist.Ind.App., 566 N.E.2d 1077, *trans. denied.* Although the issue before the court was whether a "good

faith dispute" exception exists with respect to the treble damage and attorney fee provisions of I.C. 22–2–5–2, the court held, by necessary implication, that the bonus there involved, when not paid, gave rise to a claim under I.C. 22–2–5–2. Be that as it may, I believe *Jeurissen* and *Wilson* to be more persuasive and would decline to follow *Todd*.

I fully concur in the majority's determination that the judgment was properly entered against only Travel Trade, Inc.

I would affirm the judgment in all respects.