**John A. JOHNSON and Sylvia D. Johnson d/b/a Johnson Realty, Appellant (Defendant Below),**

v.

**Kristinia J. WILEY, Appellee (Plaintiff Below).**

**No. 35A04–9212–CV–460.**

Court of Appeals of Indiana, Fourth District.

May 17, 1993.

---

Richard DeLaney, Gordon Bendall Branham, McNeely & DeLaney, Huntington, for appellant.

James E. Chovanec, Huntington, for appellee.

MILLER, Judge.

Kristinia J. Wiley worked for Johnson Realty of Huntington from February, 1987 to October 13, 1991.[1] In May, 1989, Kristi-

---

1. We call Johnson's counsel's attention to Ind.Appellate Rule 8.3(A)(4) & (5). App.R. 8.3(A)(4) requires "a verbatim statement of the judgment." App.R. 8.3(A)(5) requires in part "[a] statement of the facts *relevant* to the issues presented for review." (Emphasis added). There is no statement of the judgment, verbatim or otherwise, in Appellant's Brief. Fortunately, Appellee complied with App.R. 8.3(B) and provided us with the judgment of the trial court.

nia and her boss, John Johnson, agreed to modify her compensation. Johnson Realty had been paying Kristinia's medical insurance premiums. Kristinia no longer needed the coverage because her husband's employer now provided full medical coverage. Kristinia and John agreed to re-allocate the $239.80 monthly insurance cost as follows: (1) $0.74 (seventy-four cents) an hour as an hourly rate increase; (2) payment of her Optimist Club dues in the amount of $220.00 per year; and (3) a deposit of $104.80 per month to a deferred compensation retirement savings plan.

Johnson immediately began to pay the higher hourly rate and the Optimist Club dues, but did not set up the savings plan until two years later on June 1, 1991. Johnson Realty's business had been dropping and apparently money was tight. By October, 1991, Johnson could no longer afford Kristinia and terminated her employment. At this time, there was a deficit in Kristinia's account of $2146.35. Johnson refused to pay Kristinia and claimed that her savings account payment was totally dependant on the profitability of Johnson Realty. This came as news to Kristinia, so she sued for back wages and damages under Ind.Code 22-2-5-1.

The trial court agreed with Kristinia and awarded her, as per the statute, the compensation owed to her, liquidated damages, costs and attorney fees for a total judgment of $8,232.50. The trial court entered judgment against both John Johnson and his wife, Sylvia, as partners in Johnson Realty. Johnson claims the trial court erred because: (1) the evidence did not show there was an agreement which required him to pay this additional compensation; (2) he, as an employer, was free to modify or terminate a non-contributory pension plan; (3) payments to a pension plan are not "wages" under I.C. 22-2-5-1; and (4) the evidence did not support the trial court's finding that his wife, Sylvia, was a partner in Johnson Realty.

In regard to App.R. 8.3(A)(5), a witness by witness semi-verbatim transcript of the trial is not "[a] statement of the facts *relevant* to the

We affirm the judgment of the trial court and remand to the trial court for a hearing to determine appellate attorney fees.

## DECISION

### I. COMPENSATION UNDER I.C. 22-2-5-1

At trial, Johnson's defense to Kristinia's claim was that his contributions to the savings plan were contingent on the profitability of Johnson Realty. Kristinia testified that this was not the case, thus, the question of whether Kristinia's savings plan was contingent on the company's profits became one of credibility. The trial court entered findings of facts and conclusions of law as requested by Johnson under Ind. Trial Rule 52. Thus, we shall not set aside the findings or the judgment unless it is clearly erroneous and must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* Upon review, we neither reweigh the evidence nor judge the credibility of the witnesses. We look only to the evidence and all reasonable inferences which support the finding. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896.

The trial court found in pertinent part that:

5. It is an admitted fact that Johnson Realty, in lieu of the payment of insurance premiums, adopted a plan proposed by [Kristinia] for the benefit of [Kristinia] for alternate compensation, which plan is set forth in [Kristinia's] Exhibit "2" and is composed of (1) a $.74 hour wage increase; (2) payment of Optimist's dues in the amount of $220.00 per year; and (3) payment to a retirement savings plan for the benefit of Kris Wiley in the amount of $104.80 per month. *The total amount of the cost of alternate compensation equaled the exact cost of the insurance premium being paid.*

6. Payment to the retirement savings plan was not based upon company profitability, but rather was a "wage" negoti-

issues...." Counsel is advised that while we prefer to decide cases on their merits, our forbearance has limits.

ated and contracted for between [Kristinia] and [Johnson Realty].

7. *A ledger prepared by John Johnson on behalf of Johnson Realty details the commitment to Kris Wiley and demonstrates that Johnson Realty regarded the retirement savings plan benefit as amounts owed by Johnson Realty. No condition is stated in the ledger.*

8. Johnson Realty did in fact open a retirement savings plan for the benefit of [Kristinia], and made deposits to that account in amounts which were equally divisible by $104.80.

9. *The first and only written reference to the alleged condition of company profitability to the contributions to the retirement savings account were made in a letter written by Johnson on December 2, 1991. The Court does not weigh this writing heavily since it is self-serving, occurred after the termination of Mrs. Wiley's employment, and is contrary to the rather glowing remarks made by Johnson in his letter of October 15, 1991.* The term "company profitability" remains without clear definition.

\*  \*  \*  \*  \*  \*

12. Johnson Realty agreed to provide an additional compensation benefit to [Kristinia] in the amount of $104.80 per month beginning June 1, 1989, to and including October, 1991. Amounts were paid to or for the benefit of [Kristinia] on the retirement savings account in the amount of $849.23, leaving a balance owed for this benefit of $2146.35.

13. The accrued benefit was calculated for each month worked and is due [Kristinia] as a compensation benefit and wages under IC 22–2–5–1.

14. The amount was demanded by letter to Johnson Realty on November 3, 1991, and remained unpaid for ten (10) days. By reason of the non-payment, liquidated damages are due [Kristinia] in the amount of $4,292.70 plus costs and attorney fees totalling $1,793.00. The attorney fee figure is the total amount of

attorney fees proven, less $250.00 previously awarded by the Court for non-compliance with discovery requests.

R. 75–78 (emphasis added).

■ Johnson claims that the evidence conflicted as to the terms of the agreement between Kristinia and himself and implies that we should believe him instead of Kristinia. As noted above, we do not reweigh evidence nor judge the credibility of witnesses. There is ample evidence to support the findings of the trial court. Johnson then claims that the "contract" fails for lack of consideration because Kristinia did nothing for the "additional" compensation. The evidence clearly shows that the savings plan was not additional compensation, but merely a re-allocation of existing compensation—from medical insurance premiums to a deferred compensation account. Therefore, we find no merit to his argument.

Johnson then claims the savings plan was a "private non-contributory pension plan." He argues that as such, the employer is free to modify or terminate such benefits at will. Unfortunately, Johnson presented no evidence at trial that Kristinia's savings plan was a "private non-contributory pension plan." In fact, the evidence quite clearly showed that the plan was deferred compensation. In the absence of any evidence to support Johnson's contention, we find no merit in this claim.

■ Johnson then argues that contributions to the pension/retirement plan are not "wages" as the term is used in I.C. 22–2–5–1 and I.C. 22–2–5–2.[2] Johnson contends the pension/retirement payments were contingent on the company's profitability, therefore, the payments are not "wages" and the statute does not apply. Johnson relies on *Jeurissen v. Amisub, Inc.* (1990), Ind.App., 554 N.E.2d 12, *trans. denied* for support of his conclusion. Johnson's reliance on *Jeurissen* is misplaced.

As noted by this court in *Gurnik v. Lee* (1992), Ind.App., 587 N.E.2d 706, "[u]nfortunately these statutes do not provide a

---

**2.** These sections must be read together. Section 1 covers the payment of wages. Section 2 sets forth the penalties for failure to pay wages in Section 1.

definition for 'wages' as that term is used in Sections 1 and 2." *Id.* at 708. The court then said:

> Although not necessarily conclusive, I.C. 22–2–9–1(b), relating to wage claims, does offer a definition of wages: "The term 'wages' means all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount."

*Id.* at 709. The court noted that vacation pay is an additional wage, earned each week but deferred until a later time. *Id. citing Die & Mold, Inc. v. Western* (1983), Ind.App., 448 N.E.2d 44. In finding that— under the facts before it—a bonus could be considered "wages" as the term is used in the statute, the court said that "the law in Indiana does not exclude a bonus as wages simply because it is denominated as a "bonus."" *Id. citing Todd v. Stewart* (1991), Ind.App., 566 N.E.2d 1077, *reh'g denied, trans. denied.* [3]

We first note there was no evidence to prove that these payments were pension/retirement payments. Counsel's characterization of these payments is not evidence. As we have stated, the only evidence before the trial court showed that these payments were deferred compensation. The trial court also found that the payments were not contingent on Johnson Realty's profitability. Under the facts before the trial court, deferred compensation payments, like deferred vacation pay, are "wages" as the term is used in I.C. 22–2–5–1 & 2. *See Die & Mold, supra.* The trial court did not err.

## II. JOINT LIABILITY OF SYLVIA JOHNSON

Regarding the question of joint liability, the trial court found in pertinent part that:

15. The Court further finds that both John Johnson and Sylvia Johnson donated and contributed necessary services for the business known as Johnson Realty, which is engaged in a real estate business for profit. Since March, 1990, neither Sylvia nor John Johnson received money from the business in the form of employee wages. John Johnson and Sylvia Johnson both provided real property for the business known as Johnson Realty without a lease. Sylvia Johnson and John Johnson received the benefits of principal reduction on mortgage indebtedness by reason of payments on said indebtedness, which payments are made from the income of Johnson Realty. Sylvia Johnson and John Johnson were both responsible for tax liabilities and share equally in tax refunds according to their 1989, 1990, and 1991 tax returns.

16. Since both Sylvia Johnson and John Johnson contribute services and property for Johnson Realty, and receive a share of the profit (albeit not equally), and because Johnson Realty is a business engaged for profit, Sylvia Johnson and John Johnson are a business partnership jointly and severally liable to [Kristinia] on account of the judgment herein relating to the employment of [Kristinia] with Johnson Realty.

R. 77–78. Johnson claims the evidence is insufficient to support the findings of the trial court. He claims evidence showing Sylvia's lack of daily involvement precludes

---

**3.** Indiana's broad common law definition of wages comports with the definition of wages given by Black's Law Dictionary (6th ed. 1991):
Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him. *Ernst v. Industrial Commission* (1944), 246 Wis. 205, 16 N.W.2d 867.

The term should be broadly defined and includes not only periodic monetary earnings, but all compensation for services rendered without regard to the manner in which such compensation is computed. *Ware v. Merrill Lynch, Pierce, Fenner & Smith* (1972), 24 Cal. App.3d 35, 100 Cal.Rptr. 791, 797, *aff'd sub nom.* (1973), 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348.
*Id.* at 1579.

a finding of partnership and argues that Johnson Realty is a sole-proprietorship.

 A partnership in Indiana is an association of two or more persons carrying on as co-owners a business for profit. Ind. Code 23–4–1–6. Although mere joint tenancies in property do not, by themselves, establish a partnership, receipt by a person of a share of the profits is prima facia evidence that he/she is a partner in the business. *Endsley v. Game–Show Placements, Ltd.* (1980), Ind.App., 401 N.E.2d 768. Lack of daily involvement by one partner is not *per se* indicative of an absence of a partnership. *Id.*

The evidence shows that Sylvia performed services for Johnson Realty from March of 1990, to the date of the trial in this action. She was not compensated in the form of wages. She was co-owner and co-mortgagor of the building and land housing Johnson Realty. She received the benefit of the principal reduction on this mortgage as payments were made. The joint tax returns placed into evidence showed that in 1989, 1990, and 1991, Sylvia and John Johnson shared in the net profits or net loss of the business. They testified that they would equally share in any refund and/or tax liability. In sum, Sylvia Johnson contributed both services and property for the business of Johnson Realty.

In other words, Johnson's argument failed the "duck" test. In the instant case, the Johnsons acted like partners, worked like partners, and shared profits/losses as partners. The trial court did not err in finding them to be partners in Johnson Realty and holding them jointly and severally liable to Kristinia.

The judgment of the trial court is affirmed.

## III. CROSS APPEAL

Wiley has timely filed motions (one in the trial court and another with this court) for appellate attorney fees and expenses. We have construed the "reasonable attorney fees" language of I.C. 22–2–5–2 to include appellate fees. *Vazquez v. Dulios* (1987), Ind.App., 505 N.E.2d 152. Our decision

was based upon *Templeton v. Sam Klain & Son, Inc.* (1981), Ind., 425 N.E.2d 89.

We therefore remand this case to the trial court which shall, after a hearing, award reasonable appellate attorney fees and expenses.

CHEZEM and CONOVER, JJ. concur.