**INDIANA REPUBLICAN STATE COMMITTEE, Appellant–Defendant,**

v.

**Julie SLAYMAKER and Jennifer Nash, Appellee–Plaintiffs.**

No. 73A01–9302–CV–52.

Court of Appeals of Indiana, First District.

June 8, 1993.

David M. Brooks, J. Murray Clark, Clark, Quinn, Moses, & Clark, Indianapolis, for appellant-defendant.

Robert G. Barker, Indianapolis, for appellee-plaintiff.

BAKER, Judge.

In this case of first and undoubtedly last impression, we must determine to whom should be distributed that portion of the cost of personalized license plates intended for but rejected by a qualifying political party. The trial court concluded the money was a "political contribution" which, upon the political party's rejection, must be returned to the contributor.

## FACTS AND PROCEDURAL HISTORY

The facts underlying this litigation are not in dispute. When an individual buys a personalized license plate (PLP) for his or her automobile, $30.00 of the PLP's total cost is specifically set aside by statute for distribution to certain political parties. A political party qualifies for receipt of PLP funds if it "cast at least five percent (5%) ... of the total vote of the state of all political parties at the last general election for the office of governor...." IND.

CODE 9–18–15–13.[1] After collection by the Bureau of Motor Vehicles, the PLP money is deposited with the treasurer of the state in a "special fund." The state auditor then periodically distributes the accumulated PLP money from the special fund to the treasurers of the qualifying political parties' state central committees, which must then distribute half the money received to their respective county central committees. The constitutionality of this public funding scheme was established in *Libertarian Party of Indiana v. Packard* (7th Cir.1984), 741 F.2d 981, and is not at issue here.

Sometime prior to December 12, 1989, Indiana Auditor Ann G. DeVore mailed a $147,705.00 check to defendant-appellant Indiana Republican State Committee (Republicans). The money represented the Republicans' share of the previous year's PLP money. The Republicans, however, rejected the money. In a letter dated December 12, 1989, then-party chairman Keith Luse informed Auditor DeVore that the Republicans were "returning this check to the State of Indiana" and that "[t]he Indiana Republican State Central Committee will no longer accept personalized license auto plate funds." *Record* at 203. Luse informed Auditor DeVore that he would seek "the introduction of legislation eliminating future allocation of personalized auto plate funds to political parties." *Record* at 203.

Upon return of the check, Auditor DeVore returned the PLP money to the special fund. She asked then-Attorney General Linley Pearson to issue an opinion letter as to the fate of the rejected funds. Pearson concluded the $30.00 portion of the total cost of a PLP was a "political contribution" and inasmuch as the Republicans had rejected the gift, the contributors (that

is, the PLP buyers) were entitled to the return of their $30.00 contributions. 1990 Op.Ind. Att'y Gen. No. 24. The trial court ultimately adopted this reasoning when the PLP buyers sued to recover the returned PLP money.

On March 20, 1991, the Republicans reversed their position. Their new party chairman, Rex Early, wrote Auditor DeVore that the Republicans had "rescinded [their] past policy of not accepting the personalized auto plate contributions" and further stated "[t]he Indiana Republican State Committee will accept all accrued contributions in your possession as well as any contributions as they come due in the future." *Record* at 222.[2] Later that day, plaintiff-appellees Julie Slaymaker and Jennifer Nash, two individuals who had purchased PLPs during the time the Republicans had refused the PLP money, petitioned for writ of mandamus by which they sought to prevent Auditor DeVore from releasing the rejected PLP money to the Republicans. After the Republicans intervened and after a class was certified,[3] the parties agreed to convert the original cause of action to one seeking declaratory and injunctive relief.

Both sides then sought summary judgment based on stipulated facts, the essence of which have been set forth above. The trial court was persuaded the $30.00 portion of the total cost of a PLP was a "political contribution" such that its rejection entitled the contributor to a return of the money. It granted summary judgment in favor of Slaymaker, Nash, and the other class members (occasionally referred to simply as Slaymaker) and denied the Republicans' summary judgment motion. The Republicans appeal.[4]

---

1. Formerly codified at IND.CODE 9–7–5.5–8. For convenience, we will use the more recent version of the PLP chapter, which is substantively identical to the older version.

2. By the time this matter came before the trial court, most of the Republican county central committees had joined the state committee's bandwagon and assigned their interests in the PLP money to the state central committee. Thus, the amount in dispute is much greater than $147,705.00. It is currently kept in special

fund 900–235 and "exceeds $360,000.00." *Record* at 142.

3. The class, estimated to number 30,000, consists of those individuals who purchased PLPs during the time the Republicans rejected their share of the PLP money.

4. We held oral argument in this case on May 18, 1993.

## DISCUSSION AND DECISION

### Standard of Review

■■ Summary judgment is appropriate only when there exist no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). On appeal from the grant or denial of a motion for summary judgment, we face the same issues the trial court faced and we apply the same analysis. *Campbell v. Criterion Group* (1993), Ind.App. 613 N.E.2d 423. Because the trial court's decision comes to us clothed in a presumption of correctness, the litigant which lost the motion has the burden of persuading the appellate tribunal that the trial court's decision was erroneous. *Id.* Because in this case there exist no factual disputes, our task is limited to evaluating the trial court's application of law to the undisputed facts.

### A

■ "In addition to the applicable excise tax imposed under IND.CODE 6–6–5 and the regular registration fees, a person applying for a personalized license plate shall pay a personalized license plate fee and *contribution* upon an original application." IND.CODE 9–18–15–10(a) (emphasis added). "Upon payment of the required fee and service charges for an original application or renewal of a personalized license plate, the bureau shall issue a receipt designating and acknowledging a state fee, *a political contribution*, and the service charge under IC 9–29." IND.CODE 9–18–15–10(c) (emphasis added). Based on the emphasized language, the trial court concluded the $30.00 each PLP buyer paid was in the nature of a gift, subject to return upon rejection by the donee.

Although it is certainly true the statute uses the term "political contribution" to characterize a portion of the total cost of a PLP, we disagree with Slaymaker's and the trial court's position that as a result the $30.00 each PLP buyer paid was a gift. Calling a rooster an eagle thankfully does not make the rooster an eagle, just as calling a mandatory payment a "political contribution" does not make the payment a gift.[5] The PLP buyer cannot elect to not pay the "political contribution" portion of the total payment, just as the person cannot choose to not pay the "personalized license plate fee" and the "service charge." All components of the total charge for a PLP, including the "political contribution" portion, are mandatory if a PLP is to be obtained.

Because there is no voluntary or discretionary aspect involved in the purchase of a PLP (other than whether to buy one in the first instance), we reject the notion that the $30.00 payment is in the nature of a gift, donation, or contribution subject to return upon rejection by the donee. While we reach this result independently, we observe our decision is supported by dicta in the Seventh Circuit's *Libertarian Party* decision which opined the PLP money "is in effect a sales tax[.]" *Libertarian Party, supra,* at 990. We also observe that IND. CODE 9–29–5–32, added in 1991, specifically describes the total cost of a PLP as a "fee" comprised of "the applicable excise tax," "the regular registration fee," "a state fee of seven dollars ($7)," and "a political contribution of thirty dollars ($30)."

Rather than intending to characterize the $30.00 amount as a gift, it seems likely the legislature used the term "political contribution" to designate its ultimate destination. Just as part of the total PLP money collected goes to the Bureau of Motor Vehicles, the $30.00 political contribution portion goes to the "special fund" set up in IND.CODE 9–18–15–13. The use of the

---

5. As such, the "rooster-eagle" test operates in a manner opposite that of Judge Miller's recently-announced "duck" test. In *Johnson v. Wiley* (1993), Ind.App., 613 N.E.2d 446, Judge Miller rejected Johnson's argument that he and his wife were not business partners, observing they "acted like partners, worked like partners, and shared profits/losses as partners." *Opinion* 613 N.E.2d at 451. "In other words," concluded Judge Miller, "Johnson's argument failed the 'duck' test." *Id.* Here, although a portion of the cost of a PLP is called a "political contribution," it is not, in fact, a political contribution, just as a rooster is not an eagle no matter how many times you call it one.

term "political contribution" simply makes clear the legislature's intent that a particular portion of the PLP money collected be directed to the special fund for ultimate distribution to qualifying political parties.

In sum, Slaymaker and the other PLP buyers got exactly what they bargained for—a PLP in exchange for a cash payment—and are not entitled to the return of a portion of that money.[6] The trial court erroneously granted summary judgment in the class members' favor and incorrectly ordered refunds.

### B

■ Just because the PLP buyers are not entitled to refunds does not mean, of course, that the Republicans automatically win the case. It remains a fact that the Republicans rejected the PLP money to which they were entitled. They literally mailed the check back to Auditor DeVore, stating they were "returning this check to the State of Indiana." *Record* at 203. Having unabashedly repudiated their interest in the PLP money, we will not now accept the Republicans' argument that the rejected money is still theirs for the asking.

### C

■ If the PLP money is not to be returned to the PLP buyers and is no longer available to the Republicans, what then becomes of it? There are two possibilities: transfer the PLP money to the general fund or keep it in the PLP special fund.

As a general proposition, money appropriated but unused is diverted—or not diverted—according to the purpose(s) for which it was intended and the source from which it originated. Under IND.CODE 4-13-2-19(a), "every appropriation or part thereof remaining unexpended and unencumbered at the close of the fiscal year shall lapse and be returned to the general revenue fund." The rule directing unused money to the general fund applies to "every appropriation of a stated sum for a specified purpose or purposes heretofore and hereafter made from the general revenue fund[.]"[7] IND.CODE 4-13-2-19(b). If, however, the unused portion was "derived wholly or partly from special taxes, fees, earnings, fines, federal grants, or other sources which are by law appropriated for special purposes by standing, continuing, rotary, or revolving appropriations[,]" then subsection (a), which returns unused and unencumbered money to the general fund, "shall not, unless expressly so provided by law, apply...." *Id.*

Unquestionably, the PLP money collected was derived from a special source and was meant for a special purpose. Clearly, however, neither IND.CODE 9-18-15 nor IND.CODE 4-13-2-9(b) anticipated the situation confronting us today, in which the intended recipient of the PLP funds refused to accept them and returned them to the State; for this reason, we find subsection (b)'s treatment of unused money inapplicable. We observe that were we to recycle the PLP money, the Republicans would receive a portion of that which they previously rejected, and the other qualifying political parties, which have already received their allotted share, would receive more than that to which they were otherwise entitled. We conclude that under the unique circumstances before us, the fact that the PLP funds originated for a special

---

6. Further supporting the conclusion that PLP buyers who received their PLPs are not entitled to refunds is IND.CODE 9-18-15-11, entitled "Refund of Fees," which reads as follows:

   If a person who applies for a personalized license plate with a given configuration of letters of numbers is not able to obtain the license plate requested or a satisfactory alternative configuration, a license branch shall refund the entire fee to the person. However, a refund of a personalized license plate fee may not be made when the person who applies for the personalized license plate cancels the request.

It makes little sense to grant a refund to someone who has paid for and received a PLP when another person who pays for a PLP, cancels the order, and receives no PLP is not entitled to a refund.

7. *See also* Ind. *Const.*, art. X, sec. 2 ("any surplus that may, at any time, remain in the Treasury, derived from taxation for general State purposes, ... shall be annually applied ... to the payment of the principal of the Public Debt").

purpose and were kept in a special fund should not prevent them from being placed in the general fund in the event they are rejected, even if such placement is not expressly designated by law. Having eliminated one of the two possibilities, we hold that PLP money rejected by a political party should be deposited in the State's general fund.[8]

We believe the result that rejected PLP money should be transferred to the general fund is sound for another reason, as well. Once the Republicans received their portion of the PLP money, it was theirs to do with as they pleased. Without condition, the Republicans chose to "return this check to the State of Indiana." Rather than placing the money back in the PLP special fund, Auditor DeVore should have honored the Republican's request that the money be returned "to the State of Indiana" and should have deposited the money in the State's general fund, which is for "all moneys paid into the state treasury which are not by the constitution, statute, or requirement of the donor dedicated to another fund or for another purpose." IND.CODE 4–8.1–1–3. If there was a gift in this case, it was made unwittingly by the Republicans to the State of Indiana.

In sum, we are convinced the rejected money properly belongs in the general fund for Indiana's and its citizens' benefit. It was, after all, the State and its citizens who provided the service of making and delivering the PLP, who collected the money through the Bureau of Motor Vehicles, and to whom the money was returned. We order the rejected PLP money transferred from the special PLP fund to the general fund.

Given this disposition, it is no longer necessary to address the Republicans' argument concerning the PLP buyers' failure to make a demand for the money. We will, however, take a moment to remind all that our supreme court has written "no public body or officer should be subjected to a suit or litigation without first being given the opportunity, upon demand, to perform the act which it is required to do." *Lewsader v. State ex rel. Vigo County Area Plan Commission* (1963), 244 Ind. 275, 278, 190 N.E.2d 654, 656. The hope, of course, is that a timely demand "often will eliminate the necessity of any legal action or will reveal a good defense against such action." *Id.*

### Conclusion

Because the $30.00 the PLP buyers paid was not a gift and because the PLP buyers have already received the benefit of their bargain, they are not entitled to a refund of the rejected PLP money. The trial court erred in granting summary judgment in their favor. Although the PLP money belonged to the Republicans, they renounced their interest in that money and returned it to the State. The trial court correctly determined the Republicans were no longer entitled to it. In short, no party to this

---

8. Although there is no case law on the precise subject, several older Attorney General Opinions concerning long-outdated appropriations and statutes have declared that money designated for a particular purpose but unused may revert to the general fund. *See* 1923–1924 Op.Att'y Gen. at 182 (benevolent and reformatory institutions); 1915–1916 Op.Att'y Gen. at 873 (board of industrial aid for the blind); 1909–1910 Op.Att'y Gen. at 612 (outside fire and water system, sewer, grading of grounds, cement walks, driveways, outside lighting system, fencing, and architect's services).

These opinions support the proposition that money from a special source and for a special purpose has been and may be reverted to the general fund. Indeed, this is the position then-Attorney General Pearson took in his 1990 opinion letter to Auditor DeVore, in which he wrote that "[i]f the thirty dollar ($30) contributions were statutorily described as 'fees' rather than political contributions, the sums which the political parties refused to accept would be treated as property of the State and could be transferred to the general fund." 1990 Op.Att'y Gen. No. 24 at 4. Then–Attorney General Pearson evidently believed the proposition to be so elementary that it did not warrant citation to authority.

We also note the legislature has in the past occasionally specified those funds that should not revert to the general fund in the event they remain unused. *See, e.g.,* IND.CODE 15–5–5.5–9.5 (standardbred horse fund); IND.CODE 5–2–1–13 (law enforcement academy building fund).

▬▬▬▬▬▬▬▬▬

litigation is entitled to the rejected PLP money.

Pursuant to Ind.Appellate Rule 15(N)(2), we order the entry of final judgment against both appellant and appellees. Finally, because the rejected PLP money properly belongs in the State's general fund, we instruct the Clerk of Courts to deliver a copy of this opinion to the Auditor, who, upon receipt, is to deposit the disputed PLP money in the general fund.

ROBERTSON and NAJAM, JJ., concur.