HCC CREDIT CORPORATION,
f/k/a Hesston Credit Corp.,
Appellant–Plaintiff,

v.

SPRINGS VALLEY BANK & TRUST
CO., Appellee–Defendant.

No. 59A04–9601–CV–1.

Court of Appeals of Indiana.

July 31, 1996.

Garret B. Hannegan, Morgan & Pottinger, P.S.C., New Albany, for Appellant.

James C. Tucker, Tucker and Tucker, Paoli, for Appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellant–Plaintiff, HCC Credit Corporation ("HCC"), appeals the trial court's order granting summary judgment in favor of Appellee–Defendant, Springs Valley Bank & Trust Co. ("SVB & T"). We affirm.

### Issue

HCC presents three issues for review, which we consolidate and restate as follows: whether upon the undisputed facts, SVB & T was entitled to judgment as a matter of law.

### Facts and Procedural History

The undisputed facts, as set out in the trial court's order, are as follows (citations to the evidentiary materials are omitted):

Lindsey Tractor Sales, Inc. ("Lindsey Tractor") was a corporation doing business in French Lick, Indiana from a period including 1983 through 1991, its President, Secretary, and Treasurer being John P. Lindsey.

The company sold and serviced farm machinery, until it filed a Chapter 7 Bankruptcy liquidation proceeding in December of 1991, and dissolved shortly thereafter.

HCC is a company in the business of providing wholesale equipment purchase financing for dealers, such as Lindsey Tractor, for products sold to such dealers at one time by Hesston Corporation. Beginning in 1983 or 1984 through until the company's closing in 1991, Lindsey Tractor purchased equipment, on credit in later years provided by HCC, from Hesston Corporation.

Written contracts governed the relationship between Hesston Corporation and Lindsey Tractor, including a Dealer Sales and Service Agreement, and a Wholegoods Discounts and Terms Schedule, and a Wholesale Security Agreement and Power of Attorney ("Security Agreement"). While all these contracts were originally entered into between Hesston Corporation and Lindsey Tractor, Hesston Corporation assigned its rights in the Security Agreement to HCC.

Lindsey Tractor granted of [sic] a security interest in equipment it obtained with HCC's financing from Hesston Corporation. The Security Agreement entered into makes these provisions, and such security interest expressly included proceeds from the sale of equipment. Lindsey Tractor was responsible for immediate payment of sale proceeds for equipment to HCC upon the sale or delivery thereof, and this is expressly set out in the Security Agreement, in paragraph 3 thereof. Lindsey Tractor's principal understood the purpose and effect of the Security Agreement, and the requirement of paying for equipment when sold.

Hesston Corporation and HCC took steps to insure that its security interest was perfected, so as to insure its priority rights as against third parties in the equipment and sales proceeds. Hesston Corporation filed a proper financing statement with the Indiana Secretary of State covering equipment and proceeds in March of 1983, and continuation statement in January of 1988, and an assignment statement in August of 1989 showing the transfer of its security interest to HCC. Hesston Corporation also filed a like financing statement for Lindsey Tractor's Paragon, Indiana, store in August of 1988, and a like assignment statement in August of 1989.

The Dealer Sales and Service Agreement, the Wholegoods Discounts and Terms Schedule, and the Security Agreement were binding and operative during the last years Lindsey Tractor was in business, during 1990 and 1991.

On or about February of 1991, Lindsey Tractor submitted a bid to the State of

Indiana offering to sell 14 Hesston Model 8066 two wheel drive tractors ("the Tractors"), for a price of $199,122.00. The Tractors were equipment supplied by Hesston Corporation to Lindsey Tractor, on credit provided by, and subject to the Security Agreement in favor of HCC. The State of Indiana accepted the bid sometime on or prior to March 14, 1991, and Lindsey Tractor delivered the Tractors sometime subsequent to that date, but prior to August 15, 1991, when Lindsey received payment.

Lindsey Tractor received a payment for the Tractors from the State of Indiana in the amount of $199,122.00, and this money was deposited in the company's checking account at SVB & T on August 15, 1991; and at the time of the deposit, Lindsey Tractor had $22,870.00 in other monies in the SVB & T account. On the next day, August 16, 1991, Lindsey Tractor's principal, John P. Lindsey wrote a check on this account for $212,104.75 payable to SVB & T, and this check was delivered and paid from the account to SVB & T on that date. After the check was paid, along with others posted on August 16, 1991, there remained $9,348.97 in the account.

Lindsey Tractor's payment of these proceeds to SVB & T on August 16, 1991 was applied to pay debts owed by the company to the bank. These debts took the form of four notes ("the Notes") dated January 23, 1987, November 19, 1990, February 13, 1991, and February 7, 1991. Three of the Notes, by their own terms had yet to mature for full payment on August 16, 1991, when they were paid, and all four were previously refinanced debts.

During the previous eight years Lindsey Tractor had borrowed funds or refinanced debts in excess of 100 times with SVB & T, and the average debt balance owed was between $100,000.00 and $200,000.00. Two of the Notes paid off represented a refinancing of $223,772.69 in continuing debt carried by SVB & T. After the Notes were paid, Lindsey Tractor owed SVB & T between $2,000.00 and $15,000.00.

As previously set forth, on August 16, 1992 [sic], John P. Lindsey paid off four bank notes dated January 23, 1987, November 19, 1990, February 13, 1991, and February 7, 1991. Springs Valley Bank & Trust Company did not discuss paying off the four notes with Mr. Lindsey prior to their payment, nor did the Bank seize the account for the purpose of paying the four Notes.

Mr. Lindsey did not tell anyone associated with Springs Valley Bank & Trust Company that $199,122.00 of the $212,104.75 used to pay off the notes was from the sale of Hesston Corporation Products. As Ronald B. Montgomery, Vice President, Springs Valley Bank & Trust Company stated: "The Bank had no knowledge of Hesston's interest, if any."

The $212,104.75 payment by John P. Lindsey to the Bank was made from commingled funds, partially consisting of $23,509.49 which was not derived from the sale of Hesston Corporation Products. At no time did Hesston require Lindsey to take the proceeds of sales of Hesston products and put those proceeds in a separate account.

On January 5, 1993, HCC filed a complaint against SVB & T seeking to recover the $199,122.00 proceeds SVB & T received from Lindsey Tractor. SVB & T answered, denying liability. On April 26, 1995, HCC filed a motion for summary judgment, along with its designation of evidence. The trial court set HCC's motion for hearing on June 7, 1995. Thereafter, SVB & T cross-moved for summary judgment, agreeing with HCC that there were no genuine issues of material fact. The June 7 hearing was had on HCC's motion, after which the trial court denied the motion. On July 21, 1995, SVB & T moved for a hearing on its summary judgment motion. The hearing was had on August 28, 1995, after which the trial court granted summary judgment in favor of SVB & T.

*Discussion and Decision*

Upon review of a grant of summary judgment, we apply the same legal standard as the trial court: summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

Ind.Trial Rule 56(C); *Marathon Petroleum Co. v. Colonial Motel Properties, Inc.*, 550 N.E.2d 778 (Ind.Ct.App.1990). The party appealing the trial court's grant of summary judgment has the burden of persuading this court that the trial court's decision was erroneous. *Indiana Republican State Comm. v. Slaymaker,* 614 N.E.2d 981 (Ind.Ct.App. 1993), *trans. denied.*

■ HCC argues that it was entitled to judgment as a matter of law because it had a perfected security interest in the $199,122.00 proceeds from the tractor sale. HCC is correct that it had a valid perfected security interest in the proceeds. Indiana Code 26–1–9–306(2) provides that "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." In addition, Indiana Code 26–1–9–201 provides: "Except as otherwise provided by IC 26–1, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." This court has previously held "the Chapter 9 secured party, upon a debtor's default, [has] priority over 'anyone, anywhere, anyhow' except as otherwise provided by the remaining Code priority rules." *Citizens Nat. Bank of Whitley County v. Mid–States Development Co.*, 177 Ind.App. 548, 380 N.E.2d 1243 (1978). Thus, absent a Code provision placing priority in the proceeds in SVB & T, HCC would have a superior claim to the proceeds.

Indiana has recognized that Comment 2(c) to IC 26–1–9–306 is an exception to the Code's general priority rules. *Id.* 380 N.E.2d at 1250. That comment provides:

[w]here cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and transfers in the ordinary course. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds

by a secured party from the transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party.

The operative question here, is what constitutes "payments and transfers in the ordinary course."

Recently, the Seventh Circuit Court of Appeals addressed this issue when it applied Indiana law to a factually similar case. *J.I Case Credit Corp. v. First Nat. Bank of Madison County,* 991 F.2d 1272 (1993). In *Case,* the debtor was in the business of selling agricultural equipment and used cars. He maintained a single checking account into which he deposited all funds received, and out of which he paid all debts. Over a five month period, the debtor sold 26 pieces of agricultural equipment to which Case Credit held a valid perfected security interest. Debtor deposited the proceeds from the sales, $294,000.00, into his business checking account with First National Bank. First National was a creditor of the debtor, having loaned him monies to finance his used-car floor plan. The $294,000.00 proceeds were commingled in the checking account with funds received from the sale of used cars and from other sources. During the five month period, debtor made some unusually large payments to First National on the notes it held. These payments included the $294,000.00 proceeds from the equipment sales. Shortly thereafter, debtor went bankrupt.

In construing the language of Comment 2(c), the Seventh Circuit Court held that "where a debtor pays commingled funds in the operation of its business to a third party, the third party takes those funds in 'ordinary course' unless it knows the payment violates a superior secured interest in those funds." *Id.* at 1277. We agree with the Seventh Circuit's construction of the "ordinary course" language of Comment 2(c), and reiterate some of that Court's reasoning here.

The *Case* court reasoned that imposing liability too readily on payees from commingled accounts could impede the free flow of goods and services essential to business, as suppliers would take steps to insure that they will ultimately not have to return the money they receive. *Id.* In addition, the

court noted that it was reasonable to conclude that the drafters of the Code intended for the term "ordinary course" in Comment 2(c) to have a meaning similar to the same term as used in the statutory definition of "buyer in ordinary course of business." Indiana Code 26–1–1–201(9) defines a buyer in ordinary course of business as one "who [buys] in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party...." The court reasoned that these factors, good faith and lack of knowledge, should be equally necessary to qualify a payment or transfer out of commingled funds as one in the ordinary course. *Id.* at 1278.

■ Having found this reasoning persuasive, we too hold that "under Comment 2(c), a payment is within the ordinary course if it was made in the operation of the debtor's business and if the payee did not know and was not reckless about whether the payment violated a third party's security interest." *Id.* at 1279.

■ Here, the designated evidence does not support an inference that by accepting the $199,122.00 payment, SVB & T knew that Lindsey was not fulfilling his obligation to HCC. The critical factor is not whether the payee knew about the secured party's security interest, but whether the payee knew that the payment to it violated the security interest. *Id.* The undisputed facts are that Lindsey paid off the four notes on his own accord; that SVB & T did not request prepayment of the notes, nor did it seize the account in satisfaction of the notes; that Lindsey did not tell anyone associated with SVB & T that the $212,104.75 payment included $199,122.00 in proceeds from the sale of the tractors; and that Ronald Montgomery, Vice President of SVB & T testified that "[t]he Bank had no knowledge of Hesston's interest, if any."

Neither does the designated evidence support an inference that SVB & T accepted the $199,122.00 payment in reckless disregard of the fact that the payment violated HCC's security interest. We emphatically disagree with HCC's contention that the acceptance of an unprecedentedly large payment by a cred-

itor is sufficient to support an inference of recklessness. *See Id.* at 1279. Summary judgment was properly granted in favor of SVB & T.

Affirmed.

RILEY, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

I fully agree with the majority's statement of the law applicable to this case. I also agree that the "operative question ... is what constitutes 'payments and transfers in the ordinary course.'" *Opinion,* p. 1004. From its resolution of such question and its application of the law to the facts of this case, however, I respectfully dissent. SVB & T was put on notice of HCC's security interest in the debtor's inventory. *Record* at 132. It admits that it had knowledge that HCC was providing financing to the debtor. *Record* at 47. The payment here at issue was for a sum greatly in excess of any other made by the debtor to SVB & T. The extent of SVB & T's knowledge that the payment was in violation of HCC's security interest and its recklessness, if any, are material questions of fact which are not resolved by the designated evidence. For such reasons, I believe the entry of summary judgment was improper. I would reverse the grant of summary judgment and remand for trial.